## HENRY FLAGG *versus* SAMUEL H. MANN *et al.*

I conveyed land, subject to incumbrances, to P, under a verbal (and therefore voidable) agreement on the part of P, that he would convey to L or to any other person at L's request. L afterwards applied to W and F for a loan upon a mortgage of the land, but they refused to make advances of money except upon an outright conveyance, and P and L and L's wife then joined in a quitclaim deed to W and F, who at the same time gave to L alone a bond to convey to him whenever within five years he should repay them all such sums as they should expend in discharging incumbrances and making improvements on the land ; but there was no collateral promise on the part of L to repay such sums. It was *held*, that the deed and bond did not constitute a mortgage, but a sale with a right to repurchase upon condition.

L, not having complied with the condition within the five years, nor received a conveyance from W and F, gave a deed of quitclaim to the plaintiff and the defendant ; and it was *held*, that the acceptance of the quitclaim did not estop either of the grantees, in a controversy between them, from alleging that nothing passed by the deed ; and it was further *held*, that L had no interest in the land which could pass to the grantees and constitute them joint tenants or tenants in common, and consequently that one of them could not sustain a bill in equity against the other under *St.* 1823, *c.* 140, giving remedies in equity between joint tenants and tenants in common.

BILL in equity. The plaintiff sets forth in his bill, that he and the defendant Mann, on or about May 13, 1831, became and were jointly interested as tenants in common in a certain tract of land in Lowell, which was conveyed on or about June 13, 1823, by Samuel Frye, as guardian of his minor children, under a license of court, to Luther Richardson in fee ; that Luther mortgaged the land to Goodman, Saville and Kent, on September 20, 1823, for $1229.70, with interest, and on August 13, 1824, for $2850.30, with interest ; that afterwards the right of Luther to redeem the land was attached at the suit of Mellen and Norcross ; and afterwards, on or about May 14, 1825, Luther, by his deed of release, conveyed the land to

his brother Prentiss Richardson, to secure the payment of $170, upon an express (verbal) agreement between them, that Prentiss, upon the request of Luther, would reconvey to Luther or any other person ; that on May 18, 1825, Luther's right to redeem the mortgages to Goodman, Saville & Kent, was sold and conveyed by a deputy sheriff, on Mellen and Norcross's execution, to John C. Proctor, for $1200 ; that on May 21, 1825, Proctor conveyed his right to Joshua Bennett ; that Luther, being desirous of redeeming the land from Bennett and the mortgagees, applied to William W. Walker and Albigence W. Fisher for a loan of money for that purpose, and thereupon it was agreed between Walker, Fisher, and Luther, that Walker and Fisher should lend, advance and pay the sums due to Bennett and the mortgagees, and hold the land as security for the repayment of the money by Luther, and thereupon Luther and Prentiss, by their deed of release of May 6, 1826, conveyed the land to Walker and Fisher, and Walker and Fisher gave to Luther their bond of defeasance, of even date, conditioned to reconvey to Luther, his heirs and assigns, whenever at any time within five years Luther, his heirs or assigns, should pay to Walker and Fisher all such sums as they should legally pay in discharge of the incumbrances, with interest, together with such other sums as they might expend in such improvements and betterments as should be made on the land in that time, with the mutual consent of the parties ; that in September 1826, and April 1827, Walker and Fisher paid the sums due to the mortgagees, and took assignments of the mortgages and of the sums of money thereby secured to be paid ; that on May 15, 1826, they paid the sum due to Bennett and took an assignment of all his right in the land, whereby and by reason of the agreement between them and Luther they became seised of the land in mortgage and held it subject to the right of Luther to redeem it ; that on May 6, 1825, Walker and Fisher leased a part of the land to Luther for five years, at an annual rent of one cent, unless Luther should redeem within that period, and that Luther has been in possession of that part ever since ; that Luther, on or about May 13, 1831, by his deed of that date, granted, assigned and conveyed all his right in the 'and to the plaintiff and Mann, their heirs and assigns, and

the plaintiff and Mann agreed to pay therefor the sum of $9,000, part of which sum was to be applied in discharge of Walker and Fisher's demand, and the balance was to be paid to Luther, in case his title under Frye the guardian, should be found to be good ; that the plaintiff and Mann became thereby interested in common, and entitled to redeem the land from Walker and Fisher, and it was agreed between the plaintiff and Mann, that they should redeem the land and perfect the title in themselves at their mutual expense, and for their mutual benefit ; that Mann, on July 27, 1831, paid Walker and Fisher's demand and took a deed of release from them to himself, which enured to the benefit of the plaintiff as well as of Mann ; that on November 15, 1831, the plaintiff requested Mann to state an account of what he had paid, and offered to pay him one half, and requested him to convey to the plaintiff an undivided moiety of the land, but that Mann refuses ; that in July and August 1831, Mann and the defendant John R. Adams, who well knew of the agreement between the plaintiff and Mann, in order to perfect a title in themselves and share in the benefit thereof, and to deprive the plaintiff of his interest in the land, procured deeds of release to Adams from Herman A. Frye and others, claiming to have an interest in the land, and afterwards Adams released a moiety of the land to Mann, and Mann released a moiety to Adams ; that afterwards Mann conveyed a moiety to the defendant Elisha Fuller, in fee, Fuller well knowing the premises, and that Fuller reconveyed to Mann in mortgage, to secure a part of the purchase money. The prayer of the bill is, that the deeds of Mann to Adams and Fuller may be declared void, and that on payment by the plaintiff, of one moiety of the sums expended by Mann in redeeming the land from incumbrances, Mann, Adams and Fuller, may be decreed to release and convey to the plaintiff one moiety of the land.

Mann, in his answer, denies that the plaintiff and himself ever were jointly interested, as tenants in common or otherwise, in the land ; he denies that Walker and Fisher made a loan to Luther Richardson and took a mortgage as security therefor, and asserts that Luther and Prentiss made an absolute and unconditional sale to them, and that they gave Luther their bond with condition as set forth in the bill, but that the

Flagg
v.
Mann.

bond was not a defeasance ; he admits that on or about May 13, 1831, the plaintiff and himself made a proposal to Luther to purchase of him all his right in the land, and to take an assignment of Walker and Fisher's bond, and that Luther executed a quitclaim deed and an · assignment to them, but he denies that either the deed or the assignment was ever delivered, and alleges that the proposed arrangement was wholly abandoned.

The plaintiff filed a general replication.

Upon the hearing it appeared in evidence, that the land being subject to two mortgages made to Goodman, Saville & Kent, by Luther Richardson, and Luther's right in equity to redeem having been attached by Mellen and Norcross, he on May 14, 1825, released and quitclaimed all his right and title to the land to Prentiss Richardson ; that on May 19, 1825, Luther's right in equity was sold and conveyed on Mellen and Norcross's execution to Proctor ; that on May 21, 1825, Proctor quitclaimed the land to Bennett ; that on May 6, 1826, Luther and his wife and Prentiss, by an unconditional deed of that date, quitclaimed to Walker and Fisher, and that at the same time Walker and Fisher executed a bond, of the same date, to Luther, conditioned to reconvey to Luther, his heirs and assigns, and also a lease for five years, as stated in the plaintiff's bill ; that on May 15, 1826, Bennett executed a deed of quitclaim to Walker and Fisher ; that on May 13, 1831, Luther gave a deed of quitclaim to Flagg and Mann, and, by a deed indorsed on Walker and Fisher's bond, assigned to Flagg and Mann "the premises within conveyed to me in mortgage, and all my right, title, interest and estate in and to the same ;" and that on July 27, 1831, Walker and Fisher conveyed the land to Mann by a deed of quitclaim. Luther deposed that he. made a proposition to Walker and Fisher to lend him money on the land as security, but they declined, and they proposed to pay all the incumbrances on the land and take a conveyance to them, on condition that Luther should pay them lawful interest on the amount they should pay, and allow them to receive the annual rents, and that they agreed, at the same time, to give Luther a bond, allowing him the right to redeem within five years. Walker and Fisher deposed tha

they refused to lend Luther money upon a mortgage, but offered to purchase the land outright, and to give a bond to reconvey upon terms ; and that the writings were to be so drawn as not to operate as a mortgage. Fisher also deposed, that the object of Walker and himself in having Luther execute the deed with Prentiss was, that Luther's wife might sign it, releasing her right of dower. Prentiss Richardson deposed, that when he received the deed from Luther, he did not expect to stand in his brother's way in disposing of the property at any time when he thought proper ; that there was no agreement between them to that effect, but this was their mutual understanding ; that he executed the deed to Walker and Fisher for his brother's benefit, and that he had previously held the land for his brother's benefit ; and that the debt due to him from his brother had been otherwise secured to his satisfaction.

*Rand* and *Loring*, for the plaintiff, in order to show that the Court had equity jurisdiction in the case, under *St.* 1823, *c.* 140, contended that Flagg and Mann were tenants in common.

It appears from the evidence, that the deed from Luther and Prentiss Richardson to Walker and Fisher, and Walker and Fisher's bond to Luther, were a security for the repayment of money, and if the deed had been from Luther alone, they would manifestly constitute a mortgage. Co. Lit. 205 *a*, § 332 ; *Manlove* v. *Ball*, 1 Eq. Cas. Abr. 313 ; *S. C.* 2 Vern. 84 ; *Peterson* v. *Clark*, 15 Johns. R. 205 ; *Erskine* v. *Townsend*, 2 Mass. R. 493 ; *Kelleran* v. *Brown*, 4 Mass. R. 444 ; *Carey* v. *Rawson*, 8 Mass. R. 159 ; *Rice* v. *Rice*, 4 Pick. 349 ; *Newhall* v. *Burt*, 7 Pick. 159 ; *Conway's Executors* v. *Alexander*, 7 Cranch, 237. Any agreement to convert a mortgage into a conditional sale, is unconscientious, illegal and void. *Henry* v. *Davis*, 7 Johns. Ch. R. 40 ; *S. C.* 2 Cowen, 324 ; 1 Madd. Practice, 414 to 418 ; *Longuet* v. *Scawen*, 1 Ves. sen. 406 ; *Newhall* v. *Burt*, 7 Pick. 159. The fact that there was no collateral personal security on the part of Luther, is immaterial. There was an implied promise to repay Walker and Fisher. *King* v. *King*, 3 P. Wms. 360 ; *Howel* v. *Price*, 1 P. Wms. 291 ; 1 Powell Mortg. (Rand's ed.) 119 *a*, note κ ; *Cope* v. *Cope*, 2 Salk. 449.

Further, when they paid the sums due to Goodman, Saville & Kent, they did not release Luther, but took an assignment of the mortgages and notes against him. But even if there were not so much as an implied promise, the transaction would nevertheless be a mortgage. 1 Ves. sen. 406 ; 1 P. Wms. 291 ; 8 Mass. R. 159 ; 4 Pick. 349 ; 7 Pick. 159 ; 3 P. Wms. 358 ; 4 Mass. R. 444 ; *Goodman* v. *Grierson*, 2 Ball & Beatty, 274 ; *Conway's Executors* v. *Alexander*, 7 Cranch, 237, *et seq.*

Notwithstanding the conveyance to Walker and Fisher was by Luther and Prentiss, and the bond of Walker and Fisher was made to Luther alone, the transaction was a mortgage. It will be objected that Luther had no title when he executed the deed to Walker and Fisher, having previously conveyed to Prentiss, and therefore the bond to Luther alone could not operate as a defeasance. But Prentiss testifies that he held for his brother's benefit ; and although, if this were a suit by Luther against Prentiss, the statute of frauds might be pleaded, yet in the present case, where the trustee does not choose to avail himself of the statute, the Court will enjoin a fulfilment of the trust. *Hampton* v. *Spencer*, 2 Vern. 288 ; *Cottington* v. *Fletcher*, 2 Atk. 155. Here the trustee not only admits the trust, but has in fact executed it by conveying to Walker and Fisher for the benefit of Luther. The conveyance by Prentiss and Luther is the same in effect, as if Prentiss had first quitclaimed to Luther and then Luther had quitclaimed to Walker and Fisher ; and in a court of equity this course will be deemed to have been pursued. A defeasance made to a cestui que trust, instead of the trustee, will make the conveyance a mortgage. *Burgess* v. *Wheate*, 1 W. Bl. 155, 160, 162 ; *North* v. *Champernoon*, 2 Chan. Cas. 78. Further, a defeasance to one of two persons claiming under the same title, enures to both. It is sufficient that the bond to Luther was not made to a stranger. The defeasance was between all the parties in interest. Vin. Abr. *Defeasance, E* ; Shep. Touch. 397 ; Lit. § 275, 276 277. Luther, therefore, being a mortgager and having conveyed his estate to Flagg and Mann, they became thereby tenants in common.

But aside from the question of mortgage, when Luther made

the quitclaim to Flagg and Mann, and assigned to them Walker and Fisher's bond, he had a valuable interest in the land, inasmuch as this court of chancery would have compelled a specific performance of the bond, if Luther had tendered the sum due to them, after the five years had elapsed ; for time is not of the essence of the contract, where money is to be paid with interest and a forfeiture saved.   Jerem. Eq. Jurisd.  461 ; *Seton* v. *Slade*, 7  Ves.  272 ;  *Levy* v. *Lindo*, 3 Meriv.  84 ; *Jessop* v. *King*, 2  Ball &  Beat.  94 ;  *Barnardiston* v. *Fane*, 2 Vern. 366 ;  *Grimston* v. *Bruce*, ibid. 594 ;  *Hearne* v. *Tenant*, 13 Ves.  287 ;  *Page* v. *Broom*, 4  Russell, 6 ;  Sugd. Vend. c. 8.   Since the *St.* 1817, c. 87, this Court, as a court of equity, may regard the bond of Walker and Fisher as a declaration of a trust, or as an agreement in writing to be specifically performed, and  in either view it may be considered as giving Luther a right in equity to redeem.   The transactions disclosed show a resulting trust for the benefit of Luther, and if so, the Court might enforce it even if there had been no bond.   *Powell* v. *Monson &c. Co.* 3 Mason, 360 ;  *Lench* v. *Lench*, 10 Ves.  517 ;  *Philips* v. *Crammond*, 2  Wash. C. C. R. 445 ;  *Boyd* v. *McLean*, 1  Johns.  Ch.  R. 582 ;  *Wray* v. *Steele*, 2 Ves. & Beam. 390 ;  *Hughes* v. *Edwards*, 9 Wheat. 495 ;  *Botsford* v. *Burr*, 2 Johns.  Ch.  R. 409 ;  *Dorsey* v. *Clarke*, 4  Harr. &  Johns. 551 ;   *Bartlett* v. *Pickersgill*, 1 Eden, 516 ;  *Gregory* v. *Setter*, 1 Dallas, 193 ;  *German* v. *Gabbald*, 3 Binn. 302.   The purchase of this right of Luther, in the mode above mentioned, constituted Flagg and Mann tenants in common, or copartners.

Walker and Fisher having redeemed of Bennett by virtue of the deed from Luther and Prentiss to them, they, and the defendants who claim under them, are estopped to deny that they held under Luther.   So also Flagg and Mann having taken a deed from Luther and an assignment of Walker and Fisher's bond, are estopped, at least as against each other, to deny that Luther had a title ; and although it were merely a colorable title, the purchase of it would make them joint tenants or tenants in common.   Lit. § 476, 477, 667 ; *Adams* v. *Barnes*, 17 Mass. R. 365 ; *Fitch* v. *Baldwin*, 17 Johns. R. 161 ; Com. Dig. *Estoppel*, *A*, 3.   Flagg and Mann pur-

40 *

chased an imperfect title as such, intending to make it good, and the extinguishment by Mann, of adverse claims, enured to the benefit of both. *Van Horne* v. *Fonda*, 5 Johns. Ch. R. 388 ; Lit. § 307, 308, 470, 471, (and Coke's Commentary,) 472 ; Collyer on Partn. 96 ; *Fawcett* v. *Whitehouse*, 1 Russ. & Milne, 132 ; *Burton* v. *Wookey*, 6 Madd. 367 ; *Featherstonhaugh* v. *Fenwick*, 17 Ves. 312, 314 ; *Stewart* v. *Brown*, 2 Serg. & Rawle, 461 ; *Powell* v. *Monson &c. Co.* 3 Mason, 360, 364 ; *Wray* v. *Steele*, 2 Ves. & Beam. 388 ; *Philips* v. *Crammond*, 2 Wash. C. C. R. 441.

*J. Mason* and *F. Dexter* for the defendants. This Court have refused to assume equity jurisdiction by implication ; and it is manifest that the question of jurisdiction is to be settled according to the principles of legal evidence and not by the rules of equity. *Tirrell* v. *Merrill*, 17 Mass. R. 121 ; *Kelleran* v. *Brown*, 4 Mass. R. 443 ; *Black* v. *Black*, 4 Pick. 237. In determining whether Flagg was a tenant in common with Mann, so as to have a remedy in equity, the Court must look at the legal title. *Manning* v. *Fifth Par. in Gloucester*, 6 Pick. 19 ; *Hunt* v. *Maynard*, ibid. 489 ; *Pratt* v. *Bacon*, 10 Pick. 123. Luther Richardson, by his deed to Prentiss, had parted with all his right in the land. He joined with Prentiss in the deed to Walker and Fisher, merely to enable his wife to release her dower. The bond given to him alone, by Walker and Fisher, did not constitute the transaction a mortgage. A bond to reconvey is allowed to operate as a defeasance, only to avoid circuity of action, and the performance of it must merely restore the parties to their former estate ; but the effect of the bond in question would be to transfer the estate to one of the two grantors. Shep. Touch. 397 ; 2 Wms's Saund. 48, note ; 1 Powell Mortg. (Rand's edit.) 4, note 1 The Court will regard the intention of the parties, which was, that this bond should not operate by way of defeasance.

It is said that Prentiss held in trust for Luther, but the deed to Prentiss was absolute in form, and parol evidence is not admissible to show that it created a trust. Prentiss cannot now come in and defeat a title derived from him, by acknowledging an old trust. 2 Hovend. Fr. 7

A defeasance made to a cestui que trust, is not at law a mortgage.

The defendants are not estopped to deny that Luther had any estate, the conveyance from him being by deed poll and being merely a release. Co. Lit. 47 *b*, 352 *a*, 363 *b*; *Small* v. *Procter*, 15 Mass. R. 495; *Somes* v. *Skinner*, 16 Mass. R. 357; Com Dig. *Estoppel*, *A*, 2; Shep. Touch. 53. No case has been cited where two, by taking under one deed, are estopped as against each other.

There was no loan from Walker and Fisher to Luther. To constitute a mortgage, there must be a debt, and a personal remedy against the mortgager. 1 Powell Mortg. (Rand's edit.) 5, note; *Goodman* v. *Grierson*, 2 Ball & Beat. 276; *Rice* v. *Rice*, 4 Pick. 349; *Conway's Executors* v. *Alexander*, 7 Cranch, 237.

A conveyance with a contract for a repurchase within a limited period, and not after, is supported in England in a court of equity, and also in this country. *Newcomb* v. *Bonham*, 1 Vern. 7, 213, 232; *Mellor* v. *Lees*, 2 Atk. 494; *Ensworth* v. *Griffiths*, 5 Bro. Parl. Cas. (Tomlins's edit.) 184; *Goodman* v. *Grierson*, 2 Ball & Beat. 276; 2 Hovend. Fr. 181; 1 Powell Mortg. (Rand's edit.) 138, 139; *Heister* v. *Fortner*, 2 Binn. 43; *Conway's Executors* v. *Alexander*, 7 Cranch, 237; *Reading* v. *Weston*, 7 Connect. 144.

Time was of the essence of the contract between Luther and Walker and Fisher, and a court of equity would not extend it. *Levy* v. *Lindo*, 3 Meriv. 84; *Hearne* v. *Tenant*, 13 Ves. 287; *Alley* v. *Deschamps*, ibid. 227; Jeremy on Eq. Jurisd. 461; *Seton* v. *Slade*, 7 Ves. 272.

PUTNAM J. delivered the opinion of the Court. The first inquiry to be made is, whether the complainant and respondents were tenants in common or joint tenants, within the meaning of the statute of 1823, *c*. 140, § 2, an act for giving further remedies in equity. It provides that this Court " may hear and determine in equity all disputes between copartners, or joint tenants and tenants in common, and their legal representatives, in cases where there is no adequate remedy at law, and may thereupon compel such discoveries and disclosures, and make such orders, injunctions and decrees, as equity in such cases shall seem to require."

*Oct. 17th*

Flagg
v
Mann.

The complainant contends that he and Mann became tenants in common in virtue of the deed of Luther Richardson, dated May 13, 1831, and of an assignment of the same date to them ; by the former of which Luther R. remised, released and for ever quitclaimed the estate in dispute to Flagg and Mann, and by the latter, (which was written on the back of the bond of Walker and Fisher to Luther R.) he " granted, assigned, released and conveyed to them the premises within conveyed to him in mortgage and all his right, title, interest and estate in and to the same."

The respondents contend that the parties did not become tenants in common in virtue of those instruments.

From the views we have taken of this cause, it will not be necessary for us to determine whether the deed of quitclaim was delivered absolutely or not, or whether the negotiation was abandoned or not. Let it be supposed that the deed was delivered, and that the bond was delivered at the same time absolutely, and that the negotiation was not abandoned.

We then proceed to inquire, whether Luther Richardson then (viz. on the 13th of May, 1831) had any right or interest in the real estate described in the bill, which could pass to the grantees, Flagg and Mann, whereof they could be joint tenants or tenants in common.

It is certain that Luther Richardson had no right as the original mortgager, for that right vested in Prentiss Richardson by the deed of Luther on the 14th of May, 1825. That deed was·made after Luther's right in equity had been attached, which right was taken and sold by the officer for the attaching creditor, and by assignment came regularly to Bennett. So Luther's legal as well as equitable title was gone completely. The legal title was then in the mortgagees. Bennett, the assignee of the right in equity, had the right to redeem the mortgages, and Prentiss Richardson had a right to redeem the right in equity that Bennett held. The lease for five years for a nominal rent, had then expired by its own limitation, seven days before Luther made his deed to Flagg and Mann. All right and interest was gone from Luther completely, unless the verbal agreement set forth by the plaintiff, between Luther and Prentiss, preserved any right for Luther

But we think it perfectly clear, that such verbal agreement was within the statute of frauds. The deed to Prentiss was absolute in its terms. No parol evidence is admissible, to show that it was upon a mortgage or in trust for the grantor. If it were voidable by the creditors of Luther on the ground of fraud, they have not avoided it, and it was good betw the original parties. A short time before the expiration of the ir within which there was a right to redeem the right in equity which Bennett held, Luther made application to Walker and Fisher for assistance. It appears that Prentiss Richardson was willing to make any conveyance which Luther should desire. The negotiation between Luther and Walker and Fisher, concerning the mortgage or sale (whichever it may be) then took place. There is no evidence that Walker and Fisher had any knowledge of any parol trust existing between Prentiss and Luther in regard to that deed, if any ever did exist.

At that time, viz. May 13, 1831, Prentiss Richardson, and he only, had the right to extinguish the claim of Bennett; which would enable him to redeem the outstanding mortgages.

When Luther Richardson and Walker and Fisher had agreed upon the sale or the mortgage, (which ever it may be,) *Prentiss* conveyed to Walker and Fisher all his right, and Luther and his wife joined in the deed. It appears from the testimony of Fisher, that the object which Walker and Fisher had in having Luther join in the deed, was, that the wife of Luther should release her right of dower in the estate. The deed of Prentiss and Luther to Walker and Fisher, dated May 6, 1826, gave to the latter a right to redeem the right in equity from Bennett, and the right to redeem against the mortgagees. And they gave the bond *to Luther* on the same day. So the question is narrowed to the consideration of the right which Luther acquired under and in virtue of the bond.

The bond recites the deed, and provides for a reconveyance to Luther, his heirs and assigns, whenever at any time within five years he or they should pay Walker and Fisher such sums as Walker and Fisher should legally pay in discharge of the incumbrances, with such other sums as they should expend n improvements and betterments.

If that transaction constituted a mortgage, then Luther, on

May 13, 1831, had a right in equity of which his grantees, Flagg and Mann, became tenants in common by his deed to them of that date. If it was not a mortgage, but a sale, with a contract on the part of the grantees for a conditional repurchase by Luther, then Luther, on May 13, 1831, when he conveyed to Flagg and Mann, had no right at all, as he did not within the term of five years pay the money to Walker and Fisher, which they had paid and laid out for the incumbrances and betterments.

It is very well settled, that, if this is to be taken as a security for a *loan*, no agreement of the parties could impair the right of redeeming, which is incidental to mortgages. The authorities are too clear to that point, to require particular citation. The plaintiff sets it forth as a mortgage ; the defendants deny it ; and we must go to the evidence to ascertain the truth.

According to the testimony of Luther Richardson, he proposed that Walker and Fisher should *lend* the money, and take the estate as security, but they declined. According to Fisher's deposition, *they refused to lend* the money, but proposed to Luther to purchase his estate *outright*, and to give a bond to reconvey upon terms ; and it was expressly agreed, that it should not be or operate as a mortgage. Walker swears that he and Fisher refused to let Luther have the money at any rate upon a mortgage, and unless they could buy the estate of him *outright*. It was then incumbered to nearly or quite the full value, and the only consideration which Luther received for the conveyance to Walker and Fisher, was the right of redeeming or repurchasing the estate within five years.

There was no collateral undertaking on the part of Luther to pay the money which Walker and Fisher should advance, in the five years ; so there was no mutuality. And this fact, though not conclusive, is to be taken into consideration in ascertaining whether the transaction was a mortgage, or a sale with a contract for a repurchase upon strict terms. *Goodman* v. *Grierson*, 2 Ball & Beat. 279 ; *Conway's Executors* v. *Alexander*, 7 Cranch, 237. It is a fact deserving of much attention, and affects the equitable rights and claims. For if, on

the one hand, in case the estate should depreciate in value, Walker and Fisher must have borne the loss, they having no contract from Luther for the repayment of the money ; it would seem equitable and just on the other, that they should have the benefit of any subsequent advance of the estate in value, if the money were not paid within the stipulated period.

It was a contract very favorable to Luther. If within the five years he could obtain a dollar more than the money advanced in discharge of the incumbrances and expended in the improvements, by Walker and Fisher, with lawful interest, he might secure it for his own benefit ; if the estate should fall in value, they had no remedy.

And there is no room from the evidence, to impute any oppression or undue advantage on the part of Walker and Fisher. On the contrary, the parties to the bond, as it appears to us, treated with each other fairly and with a full understanding of their rights.

It was contended however, that assumpsit might be maintained by Fisher and Walker for the money advanced. But that right would depend upon the question, whether there was a loan. If there were a loan and a mortgage, the debt would be implied ; but there would be no such implication, if there were no loan and no mortgage.

To return to the question, was this transaction a conveyance with a defeasance constituting a mortgage. Lord *Coke* (Co. Lit. 236) says, that *defeasance* comes from " *defaire*, i. e. to defeat or undo, *infectum reddere quod factum est.*" Where it relates to lands, it must be executed at the same time with the conveyance ; because the conveyance is an executed, not an executory contract. It is to be considered as if it were annexed to or inserted in the same deed, and contains the condition upon the performance of which the estate then created may be defeated. So it must be between the same parties. 2 Bl. Com. 327 ; Shep Touch. 397 ; *Fowell* v. *Forrest*, 2 Saund. 48 ; Com. Dig. *Defeasance*, *B* 2, *C.* It is to be ascertained by the principles of the common law. *Kelleran* v. *Brown*, 4 Mass. R. 445. It must be of as high a nature as the thing o be defeated.

If this bond to Luther is tested by these rules, it will he

difficult to maintain that it can be considered as a defeasance to the deed of Luther and Prentiss. Assuming that it was sealed and delivered at the same time, it is not between the same parties.

And we have not found any case where the bond to one should be construed as defeating the deed made by two. If it operated as a defeasance, it would have revested the estate in both the grantors ; which would be directly contrary to the intent declared in the bond. There is no difference in regard to the effect, where the defeasance provides that upon the payment of money or the performing of the condition therein set forth the deed shall be void, or that the estate shall be conveyed to the grantors. The form of conveyancing is in both ways, but the uniform effect in each would be to revest the estate in the grantors.

But upon the whole evidence we are clearly of opinion that this was a sale with a right to repurchase upon condition, and not a mortgage to secure a loan. *There was no loan.* As has been said, Walker and Fisher refused to lend. If this refusal were colorable and a mere contrivance to defeat the redeemable qualities of a mortgage, it should be disregarded, as a fraud upon the law. But the facts proved in the case leave no doubt in the mind of the Court, that these parties concluded their bargain upon an outright sale, and not upon a mortgage. The pecuniary circumstances of Luther Richardson were bad. Walker and Fisher had no regard to his personal responsibility. They regarded the value of the estate merely, and took it subjected to the right granted to Luther to regain it upon strict terms. And such a contract is known and regarded in law, and is as much to be enforced by legal process, as is a mortgage, or any other contract or agreement. A decision to the contrary, would essentially, unnecessarily and unjustly fetter and impair the right to manage and dispose of property, according to the wants and interests of the owners. " To deny (says Chief Justice *Marshall* for the whole court, *Conway's Executors* v. *Alexander*, 7 Cranch, 236) the power of two individuals, capable of acting for themselves, to make a contract for the purchase and sale of lands defeasible by payment of money at a future day, or in other words, to make a sale with

a reservation to the vendor of a right to repurchase the same land at a fixed price at a specified time, would be to transfer to the court of chancery, in a considerable degree, the guardianship of adults as well as of infants." "A conditional sale, if really intended, is valid. The inquiry in every case must be, whether the contract in the specified case is a security for the re-payment of money, or an actual sale." 1. Powell on Mortg. (Rand's ed.) 137 *a*, and note 1.

The bond contains no acknowledgment of any preëxisting debt. It was not between the same persons who were parties to the deed. There was no remedy against the person for the money that should be advanced. On the contrary, the refusal to lend on a mortgage, and the agreement to make a purchase from Luther and Prentiss, with a right in Luther to repurchase upon specified terms, within a fixed time, are, we think, clearly proved. Those terms were not fulfilled within the time, and thenceforth Luther ceased to have any estate, legal or equitab'e. 2 Hovend. on Frauds, 181, 182.

It is contended, however, that Flagg and Mann, by accepting the deed of Luther Richardson, admitted that they became tenants in common, and that this estoppel is binding upon Mann and the other defendants who claim under him.

The reason which governs estoppels is, that after a man has, by his own deed or act *in pais*, admitted a fact to be true, he shall not be permitted to contradict it. This is a necessary rule, which is constantly enforced in the course of judicial inquiries. It applies as well to the law, as to the facts which are to be ascertained. Matters which have been alleged or admitted by a party to be true, shall not be by him disproved.

The material inquiry now is, whether Flagg and Mann were joint tenants or tenants in common in this real estate. Has the defendant, Mann, admitted the fact, by accepting the deed from Luther Richardson ? The deed is a release and quitclaim, in common form, of all the right, title and interest of the grantor. It does not affirm that he had any. How then can the grantees be supposed conclusively to admit that he had ? The estoppel ought to be certain to every intent, and it should not be alleged by way of inference or argument. If the admission should be coëxtensive with the grant, it

would be but conditional, viz. that if the grantor had any right or interest, which passed by his deed, it vested in the grantors as tenants in common. In other words, they would be bound by the legal effect and operation of the deed. To carry the doctrine of estoppel farther, would be to assume, without evidence, that the party has admitted the controverted facts. Shep. Touch. 53 ; Co. Lit. 363 b, § 693. Thus if a man be disseised, and having a right of entry, takes back an estate from the disseisor, by deed poll, it is a remitter to the disseisee. He shall be in under his elder and better title. He shall not be estopped from showing and maintaining his elder title, by reason of his having accepted an estate by deed poll from the disseisor.

Again, it is consistent with the deed, to plead and prove that nothing passed by it, or that the grantor was not seised at the time. Com. Dig. *Estoppel*, *E* 3, citing 1 Roll. Abr. 862, *l* 35. If a deed of feoffment be enrolled in a court of record, the party may say that nothing passed by the deed.

It is a very common thing for one, in order to avoid litigation, to purchase or extinguish claims to land which the grantee might not think to be valid, and which the grantors would not warrant ; and deeds of release and quitclaim of all the right &c. are used by the parties. It would seem to be unjust and contrary to the intent of the grantees, to affect their rights, by their acceptance of such deeds, beyond the rights and interests which should actually pass by the same.

We are therefore of opinion, that the defendant Mann, and the other defendants (who all claim under him), are not estopped by the acceptance of the deed from Luther, to show that he had no interest in the estate at the time when the release and quitclaim was made.

And it appears too, clearly, that he had not any right or interest in or to the estate, for the reasons before stated.

Our jurisdiction in relation to this suit is to be regulated by the statute of 1824 before cited. The disputes must be between copartners, joint tenants or tenants in common. It is not sufficient that the parties intended to become so. They must be so in fact. We think it very clear that Flagg and Mann intended to become tenants in common of the land, and

f we were at liberty to proceed according to the intention, and were not limited by the fact, we should go on and decide the case according to such equitable rules as govern courts having general equity jurisdiction. But we know with what caution the legislature have granted the equity jurisdiction, and have repeatedly said that we shall not assume by construction, any power which does not necessarily arise from the grant. It is not necessary for us to consider what a court having a general jurisdiction in equity would do in the premises.

Wherefore, as the plaintiff has failed to prove that he and Mann were interested as tenants in common or as joint tenants in the land, or in any right or title or interest in the same, our opinion is that we have no jurisdiction of the matters of complaint set forth in the bill. The Court therefore order and decree that it shall be dismissed ; but under the circumstances we are of opinion that no costs shall be taxed for either party.