## RICHARD T. BRIGHTWELL et al. v. HOWARD B. McAFEE, Appellant.

### Division Two, April 8, 1913.

1. **PLEADING: Quit-Claim Deed: Mortgage: Allegation of Subsisting Debt.** An allegation that certain lands belonging to plaintiffs were conveyed to defendant by quit-claim deeds, absolute in form but for a nominal consideration, under an agreement that the defendant was to sell portions of said lands and pay off a debt of the grantors secured by a subsisting mortgage on the land, and reconvey to them the remainder of the lands, is a sufficient allegation of a subsisting debt between the parties. If one owes a debt and causes another to pay it, an action for money had and received will lie against him. [Distinguishing Jones v. Hubbard, 193 Mo. 163.]

2. **DEED AS MORTGAGE: Parol Proof: Grounds: Character.** Parol testimony is admissible to prove that a deed absolute on its face is a mortgage. In this jurisdiction the ground for the admission of such testimony is that the denial of the

true character of the deed by the grantee is a fraud on his part, which gives a court of equity jurisdiction, and thus enables it to hold to the oral or implied defeasance as effectually as if it had been a formal written one. But to sustain a decree declaring the instrument to be a mortgage and permitting the grantors to redeem, the parol testimony must be clear, convincing and credible.

3. ————: **Pertinent Testimony: Consideration: Value of Property.** Evidence of the purported consideration for the deed, absolute on its face and of the actual value of the property conveyed, is competent and material in establishing that the deed was intended as a mortgage.

4. ————: ————: **Mortgage: Financial Condition of Grantor.** And it is also pertinent to show that the grantors were in straitened circumstances, that they had no other property, and that the lands conveyed were incumbered with a mortgage then past due.

5. ————: ————: **Declarations of Parties.** The declarations and statements of the parties before and at the time the conveyance absolute on its face was made, are material as showing their intent that it was to be considered a mortgage. A request by defendant of a witness to help him sell the land, and statements by the defendant that in accepting title to the property his purpose was to save the grantors their home, that all he wanted was to get enough out of it to pay the mortgage debt and turn the balance back to them, and that the deed had been made to him to enable him to sell to the best advantage, are all pertinent and material, as going to show the deed was intended for a mortgage.

6. ————: ————: **Receipts: Equivocal Testimony of Grantee.** Receipts signed by the grantee showing money received by him from the grantors, and stated by them to have been in repayment of money advanced by the defendant for them, are also pertinent evidence, especially when they read "on account of land contract;" and in connection with them, the grantee's failure to account in any way for money received by him from the grantors, after the deed was executed, should also be taken into consideration, as should also the equivocal character of his testimony.

7. ————: ————: **Possession Retained: Increase in Value.** The fact that the grantor remained in continuous possession of the land long after the execution of the deed absolute on its face, their rights thereto being unquestioned until a marked appreciation in the value of the property, is a fact not to be ignored in determining whether or not the deed was intended for a mortgage.

Appeal from Platte Circuit Court.—*Hon. Alonzo D. Burnes,* Judge.

AFFIRMED.

*John T. McRuer* and *George W. Day* for appellant.

(1) The amended petition in this case is fatally defective. If it is designed to state a conveyance in trust, it fails to state that the trust was manifested by some writing, and if it is designed to state that the conveyance was intended to be an equitable mortgage, it fails to state facts showing that the relation of debtor and creditor existed between the parties, or that such relation was subsequently to arise—mere conclusions not being sufficient. R. S. 1899, sec. 3416; R. S. 1909, sec. 2868; Cornelius v. Smith, 55 Mo. 533; Heil v. Heil, 184 Mo. 673; Crowley v. Crofton, 193 Mo. 421; Jones v. Hubbard, 193 Mo. 147. (2) The evidence was insufficient to establish that either of the quit-claim deeds was a mortgage. Such evidence must be clear, unequivocal, and convincing, leaving no reasonable doubt in the mind of the chancellor. Quick v. Turner, 26 Mo. App. 29; Bobb v. Wolff, 148 Mo. 344; Gerhardt v. Tucker, 187 Mo. 46. (3) The lease and option-to-purchase contract pleaded in the answer of defendant McAfee fixed and determined the rights of the parties. Duell v. Leslie, 207 Mo. 658; Jones v. Hubbard, 193 Mo. 147; Bailey v. Trust Co., 188 Mo. 492; Forrister v. Moore, 77 Mo. 651; Turner v. Kerr, 44 Mo. 429; Slowey v. McMurray, 27 Mo. 113; White v. Land Co., 49 Mo. App. 450; King v. Groves, 42 Mo. App. 168.

*Norton B. Anderson, Andrew D. Gresham* and *John W. Coots* for respondents.

(1) In order to ascertain whether the two quit-claim deeds of the Brightwells to appellants of April 10 and July 28, 1897, constituting one and the same transaction, were intended by the parties at the time as an equitable mortgage, courts of equity will consider: 1, The continued occupancy of the property

by the mortgagor; 2, Inadequacy of price; 3, Continued holding of the evidences of debt paid off by appellant; 4, The continuance of a debt from the Brightwells to appellant; 5, The application of respondents to appellant for a loan at the first. All this indicated that the quit-claim deeds were intended by the parties to be a mortgage, or in the nature of a mortgage. Bobb v. Wolf, 148 Mo. 344; Book v. Beaseley, 138 Mo. 461; Cobb v. Day, 106 Mo. 295. Ignorance, weakness of mind, old age, incapacity, pecuniary necessity and the like on the part of the other, these circumstances combined with inadequacy of price, may easily induce a court to grant relief, defensive or affirmative. Cobb v. Day, 106 Mo. 301. And while it may be held that the burden of proof is on him who asserts that a deed absolute on its face is a mortgage, yet this is different where the transaction had its inception in an application for a loan. Cobb v. Day, 106 Mo. 278; Book v. Beaseley, 138 Mo. 455. On a denial of the trust character of the conveyance, by the grantee, equity will treat his denial as a fraud, and hold him as firmly to the verbal defeasance, as though it had been a formal written one. Chance v. Jennings, 159 Mo. 544. (2) The right of the Brightwells to redeem could not be defeated by the pretended lease signed by them in March, 1898, and never signed by appellant. It is axiomatic, that once a mortgage, always a mortgage and all doubts must be resolved in favor of its being a mortgage. Reiley v. Cullen, 159 Mo. 331; Bender v. Marle, 37 Mo. App. 246. The right of the mortgagor is never extinguished until a regular foreclosure and sale. And this is the law no matter if the parties both intended otherwise. It is a condition that arises not by contract but by operation of law, and often in spite of contract. Lipscomb v. Talbott, 243 Mo. 1; Riley v. Cullen, 159 Mo. 331; Wilson v. Drumrite, 21 Mo. 325; White v. Land Co., 49 Mo. App. 464; Reiley v. Cullen, 159 Mo. 332; Chance v. Jennings, 159 Mo. 554; Brant

v. Robertson, 16 Mo. 129. (3) Appellant's counsel seem to contend that on April 10, 1897, the date of the execution of the quit-claim deed to appellant by the Brightwells, as there was then no existing debt from them to the appellant, this deed absolute on its face, could not be considered a mortgage. Counsel seem to lose sight of the fact that, within three days after the execution of this deed to appellant, viz., on April 13, 1897, appellant entered into a redemption bond as security with the Brightwells as principal, for the redemption of the property from the Hamilton deed of trust, and on the 28th day of July, 1897, advanced the sum of $667.30 of his own funds for the extinguishment of that debt. "It may be taken as universally true in law, that no conveyance can be a mortgage, unless it is made for the purpose of securing the payment of a debt, or the performance of a duty, either existing at the time the conveyance is made, or to be created, or to arise in the future. Brant v. Robertson, 16 Mo. 143.

WALKER, J.—This is a suit in equity to divest the title to certain lands in Platte county out of defendant, and vest it in plaintiff.

The prayer is for an accounting and that the deeds transferring the land be declared to be mortgages, and for other proper relief. From a judgment for plaintiffs, defendant appeals.

The suit was originally brought by Richard T. Brightwell and Sallie L. Brightwell, his wife, as plaintiffs, against Howard B. McAfee, as defendant. Sallie L. Brightwell subsequently died, and a revivor was had in the names of the present plaintiffs; two of the heirs of the deceased, declining to consent to be joined as plaintiffs, were made defendants.

In 1891 Sallie L. Brightwell and Richard T. Brightwell, her husband, executed a deed of trust to secure a note made to A. J. Hamilton for $1513. Hamilton thereafter died, and his administrator caused

the trustee named in the deed of trust to advertise the land for sale, and on April 10, 1897, it was sold and bought in by the administrator. A few days after the sale, the Brightwells, with McAfee, the defendant, and others as sureties, gave a redemption bond, which was filed and approved in the circuit court of Platte county.

Prior thereto an arrangement had been entered into by the Brightwells and McAfee, under which the former were to deed all the property covered by the Hamilton deed of trust to McAfee; on the day of the sale of the land under the deed of trust, the Bright-wells made a quit-claim deed to McAfee for a purported consideration of five dollars, of all the land described in the Hamilton deed of trust, absolute in form, but contended by the plaintiffs to be by way of security to McAfee for the repayment of the money he proposed to obtain and advance for them to redeem the property from the said deed of trust; to accomplish this, he was to sell such portions of the land as would be necessary to raise money to pay off the Hamilton debt and expenses, etc., incident thereto, after which the remaining portions of the land not sold, were to be reconveyed to Mrs. Brightwell. This deed was not recorded. On July 28, 1897, the Brightwells executed another deed to the same land to McAfee for the purported consideration of one dollar, the purpose only, admitted in appellant's answer, being to correct an error or defect in the description of the land contained in the deed first mentioned. The last deed was filed and recorded. On the same day the last mentioned quit-claim deed was executed to McAfee, he sold twenty-five acres of the land to Jane Ferril for $1200 and received the money therefor, and executed a deed of trust to M. Noll, Jr., on the home place of the Brightwells to secure a note for $800; and paid to the administrator of Hamilton $2067.37 in full of the debt and interest which had been secured by the deed of

trust aforesaid, and received a full release by a quit-claim deed made to him, said McAfee. In the payment of this debt, McAfee used the $1200 he had received from Mrs. Ferril, the $800 he had realized from Noll, Jr., and advanced $667.30 out of his own funds. From November 1, 1897, to October 16, 1900, McAfee sold twenty acres of the Brightwell land to the Southwest Loan & Land Company for $700, a lot to S. S. Aker for $225, and other portions of said land to Nancy A. Tabler for $425; in addition to these sums received by him, the Brightwells paid him in cash at different times, up to June 11, 1906, the aggregate sum of $993.74. On April 15, 1898, McAfee paid off the Noll deed of trust and received a full release of the same. The total amount of money received by McAfee from the sale of the portions of the land, with the additional sum paid to him by the Brightwells in cash, is $3483.74. The total amount expended by him for all purposes was about $2567.30. According to the undisputed evidence, therefore, a cash balance, $816.44, remained in McAfee's hands to cover any possible interest, insurance, taxes, repairs and other expenses incurred on account of said land. During the entire time of these transactions the Brightwells remained as they had been long before, and as Richard T. Brightwell and the administrator of Sallie L. Brightwell were at the time of this suit, in absolute possession of the portion of the lands not sold. At the time of the foreclosure under the Hamilton deed of trust these lands were worth from $6000 to $8000, and at the time of the trial the remainder of the lands not sold was worth from $4000 to $5000.

Such portions of the petition filed herein as are necessary to a review of defendant's objections thereto, are as follows:

"And plaintiffs state that the said Sallie L. Brightwell being so the absolute owner of said real estate, she, together with her husband, the plaintiff,

Richard T. Brightwell, did make, execute, acknowledge and deliver to one Albert J. Hamilton their promissory note for the sum of $1513 dated on the 18th day of June, 1891, with interest thereon from date at the rate of ten per cent per annum, and to secure said note did make, execute, acknowledge and deliver to George W. Day, as trustee for said Albert J. Hamilton, their certain deed of trust on all of said lands, which said deed of trust was duly recorded in the office of the recorder of deeds in and for said county of Platte in Book 26 at page 155.

"And plaintiffs further state said Albert J. Hamilton died intestate on or about the —— day of ——, 1896, in Platte county, and that one A. C. Hamilton was duly appointed and legally qualified as administrator of the estate of said Albert J. Hamilton, deceased, and as such administrator became the legal holder of said promissory note; that the said Sallie L. Brightwell and her husband, the said Richard T. Brightwell, having made default in the payment of said promissory note, the said George W. Day, as trustee as aforesaid in said deed of trust, on the request of the said A. C. Hamilton, administrator as aforesaid, and the legal holder of said promissory note, did proceed to foreclose said deed of trust by advertising all of said real estate for sale on the 10th day of April, 1897, in accordance with the provisions of said deed of trust.

"And plaintiffs state that the said Sallie L. Brightwell, being then in great financial embarrassment, and being ignorant of business matters, and being unable to procure sufficient ready money with which to pay said note and deed of trust, she, together with her husband, the plaintiff Richard T. Brightwell, in order to prevent a sale and sacrifice of their said lands by such foreclosure of said deed of trust, did apply to the defendant McAfee for a loan to take up said note and deed of trust; that while

said defendant at that time could not make a loan to said Sallie L. Brightwell to take up said note and deed of trust, he did agree with her and her said husband to stop said sale and to save to her said real estate from said sale and sacrifice; that by some arrangement, the exact nature of which plaintiffs are not fully advised, the said defendant did procure a postponement or stay of said proceedings; that said real estate at the time aforesaid was well worth more than double the amount of said lien and debt against the same, and at a fair valuation was worth at least the sum of eight thousand dollars.

"And plaintiffs further state, that after the stay of the proceedings of foreclosure aforesaid, an arrangement and contract was entered into by said Sallie L. Brightwell and the plaintiff, Richard T. Brightwell, with the said defendant, whereby the defendant did agree with them that if they, the said Sallie L. Brightwell and Richard T. Brightwell, would convey all of their said real estate to him, the said defendant, he would sell off portions of said property sufficient to pay off and discharge said indebtedness and reconvey to them all that remained thereof, and that he would thus save for them all of said property that was possible to be done, and would in good faith restore all of the balance to them as aforesaid; that thereupon, the said Sallie L. Brightwell and Richard T. Brightwell, reposing full confidence and trust in the defendant McAfee and in consideration of the premises and trust aforesaid, did make, execute, acknowledge and deliver to said defendant their quitclaim deed conveying to him all of their said real estate hereinbefore described, which said deed was dated the 20th day of July, 1897, and acknowledged on the 28th day of July, 1897, and duly recorded in the office of the recorder of deeds in and for said county of Platte, in Book 39, at page 130, a certified copy of which deed is herewith filed and marked 'Exhibit A.'

"And plaintiffs state that said deed of quit-claim purported on its face to be in consideration of the sum of five dollars and other good and valuable considerations, and on its face appeared to convey to defendant McAfee all of the real estate of the said Sallie L. Brightwell hereinbefore described, and stated therein that it was understood and agreed that said instrument was intended to convey and was made to transfer and convey and fully and completely all the right, title and interest of the said Sallie L. Brightwell in and to any and all real estate that she then had or owned, situate, lying and being in the town, now city of Parkville, and its additions, and in Pettis township, all in the aforesaid county and State, to the said defendant; that while said quit-claim deed thus appeared on its face to be an absolute conveyance of said real estate to the said defendant, it was in truth and in fact intended by said parties at the time to be only a mortgage and security to the said defendant to secure to him the said loan and advancements made or to be made by him to release said property of the lien of said deed of trust and to prevent a foreclosure and sale under the same, and to enable said defendant to make sales of certain portions thereof to raise funds for the purpose of paying off and discharging said indebtedness.

"And plaintiffs further state that on the same day, to-wit, on the 28th day of July, 1897, after the execution and delivery of said deed of quit-claim to defendant McAfee as aforesaid by said Sallie L. Brightwell and her husband, the said defendant did make, execute and deliver to Jane Ferril a deed to a part of said real estate, viz., the 25-acre tract aforesaid at and for the sum of $1200 and received the purchase price therefor; that on said 28th day of July, 1897, the said defendant did take up and pay off the note and deed of trust aforesaid, so executed by said Sallie L. Brightwell and husband Albert J. Hamilton as afore-

said, and that said A. C. Hamilton, administrator as aforesaid, did on said date then and there, make, execute, acknowledge and deliver his deed of quit-claim in satisfaction of said note and deed of trust, which said deed of quit-claim was duly recorded in the office of the recorder of deeds in and for said county in Book 29 at page 636; that said debt and note on said date at the time the same was so paid off by the defendant McAfee amounted to the sum of $2667.30; that on the same date, to-wit, on the 28th day of July, 1897, the said defendant did make, execute and deliver to one M. Noll, Jr., a deed of trust for $800 on a portion of said premises, which said deed of trust was duly recorded in the office of the recorder of deeds in and for said county in Book 39 at page 133; that the said defendant did on said date receive said sum of $800 from said M. Noll, Jr., by said loan, and said sum and the said sum of $1200 received of Jane Ferril, as aforesaid, from a sale of a portion of said real estate, was by said defendant paid to said A. C. Hamilton, administrator as aforesaid, towards the extinguishment of said note and deed of trust, and the defendant McAfee thereupon advanced the sum of $667.30 to complete the payment thereof.

"Plaintiffs further state that the defendant McAfee by deed dated November 1, 1897, did convey of said real estate the twenty-acre tract as aforesaid to the Southwestern Loan & Land Co., a corporation, for the price and sum of $760, and received the same; that said deed is duly recorded in the office of the recorder of deeds in and for said county in Book 38 at page 469; that on the 15th day of April, 1898, the said defendant did convey to S. S. Aker a certain portion of said real estate for the sum of $225, by deed of that date, which said deed is duly recorded in the office of the recorder of deeds in and for said county of Platte in Book 40 at page 87; that on the 16th day of October, 1900, by deed of that date, the

said defendant did convey to one Nancy A. Tabler certain portions of said real estate for the price and sum of $425, which deed is duly recorded in the office of the recorder of deeds in and for said county in Book 44 at page 286.

"And plaintiffs further state that in addition to the several sums of money .so received by the defendant McAfee from the said sales of portions of said real estate to divers persons as aforesaid, the said Sallie L. Brightwell did pay to said defendant in cash at divers times to be applied on said advancement on the Hamilton deed of trust and loan for M. Noll, Jr., aforesaid as follows: July 28, 1898, $200; February 2, 1899, $22.95; July 28, 1899, $51; January 29, 1900, $33; July 31, 1900, $41.25; January 28, 1901, $25.54; July 31, 1901, $75; January 28, 1902, $75; July 29, 1902, $100; February 24, 1903, $100; July 30, 1903, $40; January 28, 1904, $60; August 2, 1904, $75; May 1, 1905, $75; June 11, 1906, $60, and the sum of $225 received from the sale of certain lots to S. S. Aker, as aforesaid, which said sum was received by the said defendant on April 15, 1898.

"Plaintiffs further state that upon the payment of the last payment to said defendant by said Sallie L. Brightwell, on the 11th day of June, 1906, she then and there demanded of the defendant McAfee that he reconvey to her all of said property remaining after the aforesaid sales of the same, and for an accounting by said defendant as to the amounts he had received from sales of said property and from the several payments to him by said Sallie L. Brightwell as aforesaid, which the said defendant failed and refused to do and still so refuses and fails to do.

"Plaintiffs further state that since the execution and delivery of said quit-claim deed to defendant McAfee by said Sallie L. Brightwell and the plaintiff Richard T. Brightwell, as aforesaid, the said Sallie L. Brightwell remained in the full and undisputed pos-

session of all of said premises not sold and conveyed by said defendant, and so continued in such possession up to the time of her death, and that the plaintiff Richard T. Brightwell is now in possession thereof; that the said Sallie L. Brightwell up to and including the 11th day of June, 1906, paid to the defendant McAfee in actual cash to reimburse him on account of his advancements to clear said property of said Hamilton deed of trust and said Noll loan, the sum of $1158,74 as aforesaid, which said sum added to the several sums received by the said defendant from sales of portions of her said real estate as aforesaid, makes the sum of $3543.74 in actual cash that said defendant has received for the purposes of said trust, and so these plaintiffs say that the defendant McAfee has been fully paid each and every obligation, claim or demand which he may or by right could claim against said real estate, the said Sallie L. Brightwell or these plaintiffs, and cannot lawfully or in equity hold or claim said property for or on account of any claim legal or equitable by reason of the trust under which said property was conveyed to him as aforesaid.

"Plaintiffs state that they desire to redeem said property remaining unsold from the claim of defendant McAfee under and by virtue of the said quit-claim deed so executed and intended by the parties as a mortgage and security to the said defendant and to enable him to sell off portions thereof to satisfy and release it from the lien of said Hamilton deed of trust, as aforesaid, and the plaintiffs are ready and willing and here offer to pay to said defendant whatever sum that may be found to be due him by virtue of the premises, if anything there be so due to the said defendant; and plaintiffs are further ready and willing and here offer to repay and reimburse the said defendant any sums of money legally and properly expended by him under and in accordance with the terms and conditions under which said real estate was con-

veyed to him by said quit-claim deed as aforesaid, with interest thereon from the respective dates when such payments, if any, were made, and plaintiffs stand ready and willing to comply with all the terms and conditions of said contract and trust so made and entered into with the said defendant by the said Sallie L. Brightwell and the plaintiff Richard T. Brightwell aforesaid.''

The answer set up a number of defenses, not necessary to be considered, the defendant having in his assignments of errors narrowed the issues to the sufficiency of the petition, and that the quit-claim deeds made by the Brightwells to him were intended as absolute conveyances and not as mortgages. For this reason we omit the so-called lease and option-to-purchase contract.

McAfee made no attempt to account for the moneys received by him from the sales of portions of the land and the cash paid to him by the Brightwells, his counsel contending that the plaintiffs had misconceived their cause of action; that the lease and option-to-purchase contract was the determinative factor in the case, and that the same had been ignored by the trial court; that since plaintiffs challenged that instrument upon grounds which they made no effort to establish, the cause would turn upon the effect of that agreement or its performance or non-performance; that the question of mortgage or no mortgage was not an issue, and that no good could come of a showing of receipts and expenditures, and other charges of defendant thereunder.

On the trial the court found that the two quit-claim deeds, although absolute in form, were intended by all the parties thereto at the time of the execution and delivery of same as equitable mortgages to secure the defendant McAfee for a certain loan or advancement then agreed to be made by him to Sallie L. Brightwell and Richard T. Brightwell, and which was

made by him in conformity thereto, and that said defendant before the filing of the petition herein has been fully paid off and reimbursed in every part of said loan or advancement by him made on account of said quit-claim deeds, together with all interest, costs and charges by him incurred by virtue thereof, and full and reasonable compensation for all of his services in connection therewith. And that since the death of the said Sallie L. Brightwell, who died intestate, her administrator is in the possession of the lands in question; whereupon the court decreed. that the two quit-claim deeds made by the Brightwells to McAfee were in the nature of mortgages, and that they were so intended by all the parties thereto at the time of the execution thereof, and that the plaintiffs herein are entitled to a redemption of said lands, and that the debt, interest and costs secured thereby to the defendant McAfee have been fully paid off and discharged, and said lien fully satisfied, and that all the right, title, claim and lien by virtue thereof to the said McAfee be and the same is hereby divested out of him and vested in the plaintiffs, and the two defendants Annie Davis and Mary Breen, heirs of the deceased Sallie L. Brightwell. And that plaintiffs have and recover of defendant McAfee their costs and charges in this behalf expended, and have thereof execution.

Other facts not appearing in the foregoing statement will be referred to as required in the opinion.

I. The allegation contained in the petition that the lands in question were conveyed to the defendant by quit-claim deeds absolute in form but **Deed as Mortgage: Allegation of Subsisting Debt.** for a nominal consideration, under an agreement that the defendant was to sell portions of said lands and pay off a debt of the grantors, and reconvey to them the remainder of the lands unsold, is a sufficient allega-

tion of the creation of a subsisting debt between the parties.

If one owes a debt and causes another to pay it, an action for money had and received will lie against him. [Henderson v. Koenig, 192 Mo. 690; Montgomery v. Wise, 138 Mo. App. 176.]

In an Alabama case as nearly identical in its facts with the case at bar as one case can well be with another, the bill avers that ''being indebted to Brawner and Opp, who were pressing for the payment of their claims, and being in need of money to pay the same, complainant 'arranged with J. E. Shreve, to pay and satisfy orator's debts to the said Brawner and Opp, and the said J. E. Shreve paid and satisfied said debts to said Brawner and Opp, . . . and the orator to secure the said Shreve did, . . . by absolute deed of conveyance, in which orator's wife joined, convey to the said Shreve in fee simple the following described lands,' etc.; . . . that the consideration for said deed was the payment by said Shreve of complainant's indebtedness to Brawner and Opp; . . . 'that said deed' . . . (so made by complainant to Shreve) 'although it appears to be absolute on its face, was not intended by orator and the said J. E. Shreve to be such, but it was at the time of the making of said deed expressly understood and agreed between orator and the said J. E. Shreve that the said deed and the said premises thereby conveyed were to be held as security merely for said consideration, and that orator should have until, to-wit, the 1st day of January, 1904, to redeem said lands.'' The court in ruling on said bill said: ''It is averred in positive terms that complainant procured the respondent Shreve to pay complainant's indebtedness to Brawner and Opp; and to secure Shreve for the amount so paid, the complainant executed to him an absolute deed, but that it was agreed and understood at the time between

249 Mo.—37

complainant and Shreve that the deed should stand merely as a security for the amounts paid by Shreve to Brawner and Opp, and that complainant should have the right to redeem the land. The money paid to Brawner and Opp was for debts due from the complainant to them, and was paid by the respondent Shreve at the instance and request of the complainant. No question of law is better settled in this State than that 'if one who owes a debt, by any contrivance causes another to pay it, the action for money paid will lie against him.' The bill by its averments shows that the money was paid to Brawner and Opp at complainant's request, and, being paid at his request, that created an obligation on his part to repay. Certainly to secure Shreve for the payment of his money, if a plain mortgage had been given, there could be no question of the relation of creditor and debtor. The fact that the security was taken in the form of an absolute deed does not alter the principle involved. On the facts averred in the bill, there would be nothing to prevent Shreve from enforcing his security by a bill to foreclose." [Shreve v. McGowin, 143 Ala. 665.]

If the petition here had simply alleged generally the creation of an indebtedness or that a security existed by reason of the conveyance of the land to the defendant, the criticism leveled at the petition in the like case of Jones v. Hubbard, 193 Mo. 163, would apply; but instead, all the material facts necessary to aver the existence of either of said conditions are minutely set forth and the rule requiring a plain, concise statement of the matters in issue is fully complied with. [Newham v. Kenton, 79 Mo. 382.]

The manner in which the defendant acquired the title to the lands in question and his holding of same was pleaded with sufficient certainty to entitle the plaintiffs to a hearing in a court of equity.

The other essential averments in a pleading of this character are stated with formal particularity. The petition is not subject to valid objection.

II. The plaintiffs assumed the burden of showing the real nature of the transaction. [Cobb v. Day, 106 Mo. 1. c. 296; Worley v. Dryden, 57 Mo. 226.] The evidence was parol. Testimony of this character is admitted by courts in almost all jurisdictions, to prove that a deed absolute on its face is a mortgage, the grounds therefor being variously stated. Our courts admit it on the ground that the denial of the true character of the deed by the grantee is a fraud on his part which gives a court of equity jurisdiction of the case, and thus enables it to hold to the verbal or implied defeasance as effectually as if it had been a formal written one. [Cobb v. Day, 106 Mo. 278, 17 S. W. 323; Book v. Beasly, 138 Mo. 455, 40 S. W. 101; Jones v. Bush, 156 Mo. 1. c. 375.]

*Deed as Mortgage: Parol Testimony Admissible.*

This is the rule most generally stated. In some jurisdictions, however, it is said that parol testimony is not to contradict the deed, but to establish an independent equity based on the interest of the parties. [Shields v. Simonton, 65 W. Va. 179.]

Whatever reasons may be assigned for the rule it is now too well established to admit of question.

The testimony introduced to sustain the issues in this case consisted of various conditions, circumstances and facts. It was shown that the grantors were elderly people and in very straitened circumstances when they made the agreement which led to the transfer of their property to defendant, their sole possessions consisting of the land subsequently conveyed to the defendant, which was burdened with an encumbrance to secure the payment of the note then past due. The admissibility

*Pertinent Evidence.*

of this testimony was authorized. [Montgomery v. Beecher, 31 Atl. (N. J. Ch.) 451; Steel v. Black, 56 N. C. (3 Jones's Eq.) 427; Blackwell v. Overby, 41 N. C. (6 Ir. Eq.) 48; Husheon v. Husheon, 71 Cal. 407; Reed v. Reed, 75 Me. 264; Gilchrist v. Beswick, 33 W. Va. 168.]

The nominal considerations expressed in the deeds, in one instance five dollars and in the other one dollar, were shown to have been the only consideration that passed at the time the deeds were executed or thereafter. The reasonable value of the property conveyed at that time was not less than $7000 or $8000. Evidence of the purported consideration and the actual value is pertinent and material in a case of this character. [Bacon v. Nat. Ger. Am. Bank, 191 Ill. 205; Flagg v. Mann, 31 Mass. 467; Becker v. Howard, 75 Wis. 415; Glass v. Hieronymus Bros., 125 Ala. 140, 82 Am. St. Rep. 225.]

The declarations and statements of the parties before and at the time the conveyance was made are material to show their intent. Samuel H. Grayden, one of the witnesses for the plaintiffs, testified that the defendant asked him what he could do towards assisting in making sales of the property up there (referring to the property which had been conveyed to him by the plaintiffs). Defendant stated he was doing this for. the purpose of saving those old people their home; that all he wanted was to get enough out of it to pay off the mortgage. and give them back what was left after doing so. Defendant, the witness says, told him that the deed had been made to him by plaintiffs to enable him to sell to the best advantage. Robert P. McGeehan, another witness for the plaintiffs, stated that the defendant told him that he wanted witness "to go ahead and sell it" (referring to the property conveyed by plaintiffs) "and get enough money to pay off the claims to save the house and lots for the old people." In another talk witness had with the de-

fendant, the latter said that he had, or was about to take, the title of the Brightwell property in his own name and pay the Hamilton claim off; that by so doing he would be enabled to save some money and had taken the deed in his own name for that purpose. In still another conversation, defendant said it was his intention to sell off enough of the property to pay the debt and save the balance for the Brightwells.

In connection with the testimony of this character, a number of receipts were introduced in evidence showing payments of cash at different times by Mrs. Brightwell to the defendant, stated by her and her husband to have been in repayment of cash advanced by the defendant for them. All except two or three of these receipts made at different times after the conveyance of the property to the defendant, state on their face "on account of land contract." These entries are straws, but they tend strongly, when taken in connection with other testimony, to show how the defendant then construed the transaction with the plaintiffs. Admissions, declarations and statements of a defendant under such circumstances as these are always admissible in evidence. [Spencer v. Schuman, 132 Ga. 515.]

Another fact that may be taken into consideration is the equivocal character of the defendant's testimony and his failure to attempt in any way to account for the money received and paid out by him for the Brightwells, either from the sale of lands or cash paid out of his own funds on their account.

Evidence in a case of this character to sustain a decree must be clear, convincing and credible. [Gerhardt v. Tucker, 187 Mo. 46, 85 S. W. 552.] The continuous possession of the unsold property by the Brightwells up to the wife's death, and thereafter by her husband and administrator, their right thereto unquestioned, is a fact not to be ignored in determining how the defendant regarded their holding until long after Mrs. Brightwell's death and the marked

appreciation in the value of the property. While this is an equity case in which it becomes our duty to review the entire evidence, an animadversion upon the conduct of an individual should be avoided, if possible. It will suffice for us to say that the entire cast and coloring of this case indicates that the purpose of the making of the quit-claim deeds by the Brightwells to the defendant was simply in the nature of a mortgage or a security to him, and not as absolute conveyances. The evidence is sufficiently clear and conclusive to authorize an affirmance of the finding and decree of the trial court, and it is so ordered. *Brown, P. J.,* and *Faris, J.,* concur.