GERHARDT, Appellant, v. TUCKER et al.

In Banc, February 28, 1905.

1. **EVIDENCE: Deed as Mortgage: Agent of Deceased Party.** In a suit to have a warranty deed declared to be a mortgage, brought by the maker against the heirs and administrator of the deceased grantee, the mortgagor can not complain that the testimony of the go-between or agent of the mortgagor, up to the time that he became the agent of the mortgagee in the drawing of the instrument, was admitted in evidence; and the defendants cannot complain that such testimony was not excluded on the ground that it was testimony of the agent of a deceased party, if they made no such objection at the trial, but confined their objection to a statement that such agent or go-between was the mortgagor's attorney and that whatever deceased said to him, therefore, was confidential communication.

2. **DEED AS MORTGAGE: Presumption: Proof.** Where the owner of land has conveyed it by warranty deed the presumption is that the deed expressed the real contract, and that presumption will prevail unless overcome by proof, so clear and convincing that no room is left for a reasonable doubt, that it was intended as a mortgage to indemnify the grantee against loss for money due him from the maker and as surety on the maker's notes. But no particular formula of proof can be laid down as all-sufficient in such cases. Each case must depend on its own circumstances.

3. ———: ———: ———: **Case Stated.** An insolvent debtor, through his attorney, proposed that he by deed of trust make his surety and creditor a preferred creditor, and after a few interviews the surety said he would not take a deed of trust because he did not want the notoriety that would accompany a foreclosure, and then the attorney proposed that he would get the debtor to make a straight deed to the surety and when he was able to repay the surety the amount of the debts the surety would reconvey to the debtor. Held, that if those were the terms of the verbal agreement they indicate an agreement for a resale rather than a mortgage, or at best they are of doubtful meaning, and the rule of law being that before a warranty deed can be shown to be a mortgage the evidence must be unequivocal as to its terms and meaning, and the grantee being dead and the terms of the agreement depending entirely upon the oral testimony of the one witness who arranged the matter, and the prayer of the petition being, not an offer to redeem, but a re-

quest to foreclose and sell and that if the property brings more than the debts the surplus be turned over to the maker of the deed, the judgment was properly for the defendant.

4. ———: ———: ———: **One Witness: Other Party Dead.** Where the grantee in the deed which the suit seeks to have declared a mortgage is dead, the oral testimony of the one witness by whom the fact is to be shown, should be received with caution.

Appeal from Callaway Circuit Court.—*Hon. John A. Hockaday,* Judge.

AFFIRMED.

*A. Finley* and *N. D. Thurmond* for appellant.

(1) The first question to be determined by the court is, was Bailey at any time acting as attorney for Tucker, and, as such attorney, were the communications made to him such as are privileged? Bailey could not be, at the same time, agent for Gerhardt and attorney for Tucker. Two things are necessary to establish the relation of attorney and client: First, the agreement of the attorney to be an attorney for the party; and, second, the agreement of the party to have the other for his attorney. In support of our contention on the first proposition, was Bailey, Tucker's attorney, and if so, were the communications made to him of such a nature as to preclude him from testifying, we submit the following authorities: Aultman v. Daggs, 50 Mo. App. 280; Wilson v. Godlove, 34 Mo. 337; State v. Hedgepeth, 125 Mo. 14; West v. Freeman, 69 Mo. App. 682. (2) Was Bailey such an agent of Gerhardt as would render him incompetent under the statutes to testify? Does either the spirit or the letter of the statute close his mouth? What injustice would be done by permitting him to testify? Would not great injustice be done by not permitting him to testify? Samuel v. Bartee, 53 Mo. App. 587; Baer v. Pfaff, 44 Mo. App. 35; Roeder v. Shyrock, 61 Mo. App. 485; Leaby v. Simpson's Admr.,

60 Mo. App. 83; Brim v. Fleming, 135 Mo. 606.    (3) Bailey's testimony is corroborated by that offered by the defendant.  D. M. Tucker testifies that he found the notes that Bailey says made the consideration of three thousand dollars in the deed among the papers of W. B. Tucker.  If the deed was given to pay off these notes, why were the notes not turned over to Gerhardt? (4)  Was the deed in question a mortgage?  Bailey's testimony on this question is positive and without equivocation that it was, and that both Gerhardt and Tucker intended it so to be.  This court has laid down three rules by which to determine whether an instrument of writing is a mortgage or not:  First, the intention of the parties who made the instrument of writing shall determine whether or not it is a mortgage; second, if the instrument was intended as a security for a debt, it will be held to be a mortgage; third, if a court of equity is in doubt whether or not the instrument is a mortgage, it will solve that doubt in favor of its being a mortgage.  Brant v. Robertson, 16 Mo. 129; Turner v. Kerr, 44 Mo. 429; O'Neill v. Capelle, 62 Mo. 206.

*David H. Harris* and *George Robertson* for respondents.

(1)  Assuming everything that witness Bailey testified to as true, yet the facts show a conditional sale and not a mortgage.  Applying the rule of construction outlined in case of Turner v. Kerr, 44 Mo. 429, no other conclusion can be reached.  (2)  The witness was the regularly employed attorney, as well as agent, of Gerhardt and should have been precluded from testifying under section 4659; Revised Statutes 1899.  But the trial judge held that, as the agent of Gerhardt, this witness was competent and he was permitted to testify, which he did fully, and under this guise, being very willing, he managed to tell everything that he thought would benefit plaintiff, including what

passed between him and his client Tucker after he had been employed by Tucker. (3) This case does not come under the rule announced in Clark v. Thias, 173 Mo. 628, and in Dawson v. Wombles, 104 Mo. App. 272, and other similar cases, for the very obvious reason that it rests upon an entirely different state of facts. In the cases above referred to the rule is affirmed that "an agent, in making a contract, is a competent witness, notwithstanding the party with whom the contract was made is dead, provided the witness has no interest in the matter in controversy," but in the case at bar appellant was given the full benefit of this rule. His agent, Bailey, was permitted to testify fully, and while it is true that the trial court held, nominally, that as to matters passing between said witness and his client, W. B. Tucker, after witness had been employed and retained as an attorney by said Tucker, he, Bailey, was incompetent to testify, under section 4659, yet, as a matter of fact, as disclosed by the abstract, said witness was permitted to give evidence concerning all communications between him and his said client.

VALLIANT, J.—This is a suit in equity in which plaintiff seeks to have a deed, absolute on its face, decreed to be a mortgage.

The contract in question was made between the plaintiff and one W. B. Tucker, since deceased. The suit is against Daniel M. Tucker, brother and only heir-at-law of decedent, and administrator of his estate.

The petition states that prior to the execution of the deed in question, the date of which was August 1, 1898, the plaintiff was indebted to one Barton in the sum of $7,000, secured by a deed of trust on the land; also to the Callaway County Bank in the sum of $2,000, to the Home Savings Bank $500, and to W. B. Tucker $450, which, with interest, made his indebtedness $10,-000; that Tucker was surety on the notes held by the

banks; that it was agreed between plaintiff and Tucker that, in consideration that Tucker would assume the payment of the Barton notes and the notes to the banks and the $450 due himself, "the plaintiff would execute to the said W. B. Tucker a mortgage on said real estate to indemnify him, the said W. B. Tucker, against loss for so assuming and paying said $10,000, so owing by plaintiff; that upon the repayment to said W. B. Tucker by plaintiff of all the amounts so paid by him for plaintiff, together with the accrued interest thereon, that he, the said W. B. Tucker, would release said real estate from said mortgage and reconvey the same to plaintiff; that plaintiff did, on the first day of August, 1898, in pursuance of said agreement, execute to said W. B. Tucker a warranty deed to said real estate, it being agreed and intended at the time between plaintiff and the said W. B. Tucker, that said warranty deed should be held and considered as a mortgage upon said real estate to secure the said W. B. Tucker the indebtedness aforesaid upon the terms and conditions aforesaid."

The prayer of the petition is that an account be taken, showing the amount of plaintiff's indebtedness, crediting him with rents, etc., and a balance struck, "which said balance so found due as aforesaid, the plaintiff prays that he may be allowed to pay to defendants;" that upon such payment the defendant be required to reconvey the property to plaintiff or it be decreed to vest in him, "and if the plaintiff is not able to pay said balance so found against him that the same be declared a lien against said real estate" and it be sold and the proceeds paid to defendant to the amount of his debt and the balance to the plaintiff.

W. B. Tucker died in June, 1899.

At the trial the plaintiff introduced but one witness to prove the contract as alleged. That witness testified that at the request of the plaintiff he called on Mr. Tucker and made the proposal which finally resulted in the execution of this deed. Before going into the mat-

ter further, he was asked questions designed to ascertain in what capacity he was acting and for whom. In answer to such questions it came out that after the terms had been agreed upon orally, Mr. Tucker asked the witness to prepare the deed in accordance therewith, and that the witness did so, and afterwards rendered a bill against the estate for $10 for that service and it was paid. Then the defendant objected to the competency of the witness on the ground that as he was Mr. Tucker's attorney in the matter, all that he might have learned from what his client said was confidential, and could not be disclosed on the witness stand.

After considerable discussion of the point, and the questions designed to bring out testimony as to the agreement were put in various forms and met with the some objection, then this question was asked: "What did Mr. Tucker instruct you with regard to what he did tell you, that is, with regard to you telling it to Mr. Gerhardt?" At this point the abstract says, p. 21: "To this question the defendant at the time objected, for the reason that the question is with reference to a conversation with regard to this matter that was being transacted by the attorney for the plaintiff, and that makes it in the nature of a confidential communication. . . . The court ruled that this witness was not excluded by reason of his being agent for Mr. Gerhardt in this transaction; but as the attorney for Mr. Tucker, the ruling is that he is still incompetent."

After that the witness was asked: "In what capacity were you acting, with regard to Mr. Gerhardt, in the transaction of this business?" Defendant objected on the ground that it asked for a conclusion. The objection was overruled and exception taken. The witness answered: "Mr. Gerhardt came to me and employed me, or asked me, as his agent to go to see Mr. W. B. Tucker, that he wanted to prefer him in this debt, that he was being sued— Q. Tell just what Mr. Gerhardt said to you and what you did. Tell the

whole thing." Defendant objected on the ground that it called for a self-serving statement, the objection was overruled and exception taken. Then this question by plaintiff: "Go ahead and state the whole transaction?" In answer to which without further objection he said substantially as follows: Mr. Gerhardt told me to see Mr. Tucker and tell him that he was being sued by the Callaway County Bank and that he owed some other debts, and that as Mr. Tucker had befriended him in the past and he thought he would in the future, when he got on his feet and in position to start in business again, therefore, he wanted to secure Mr. Tucker and give him a deed of trust to make him a preferred creditor. Mr. Tucker said: "I am sorry Charley is in debt, but, of course, if I can save him any money I want to do it." Witness reported the result of the conversation to Gerhardt and made about three trips carrying to each what the other said. Finally Mr. Tucker agreed that he would assume the Barton notes, $7,000, which, with the notes held by the banks, on which he was already surety, and the amount of plaintiff's debt to him, made $10,000, for which amount Gerhardt was to give Tucker a deed of trust. When they came to preparing the deed of trust, Tucker said he did not want a deed of trust, did not want the publicity of advertisement in a newspaper and did not want to have to foreclose; "and I told him that I would get Mr. Gerhardt to make a square deed to him for the property, until he was able to pay it off and get the property back and that when he was, then Mr. Tucker could make the property back to him." In conformity to that proposition, the deed in question was executed. When it came to making the deed, Gerhardt wanted it to include also a vacant lot on which was a mortgage of $2,000; Tucker at first objected, because, he said, the lot was encumbered for more than it was worth, but finally consented to letting it go in, but would not agree to assume the debt on it; he did agree to assume the

Barton debt. On cross-examination: "Q. Let me
see if we understand each other. It was agreed by Mr.
Tucker, was it, that he was to accept a general war-
ranty deed, in the form this one is drawn in? A. Yes,
sir. Q. And then it was further agreed that he would
reconvey the property embraced in this deed to Mr.
Gerhardt when Mr. Gerhardt paid him the different
amounts of money which he had paid out. Is that the
way of it? A. Yes, sir. Q. There was no definite
time agreed on, though, was there, for that to be done?
A. No, sir, only when he was able to pay Mr. Tucker,
Mr. Tucker was to reconvey to Mr. Gerhardt the prop-
erty."

Plaintiff's wife testified that in February, 1899, at
the request of her husband, she carried a note for $800
made by one Tompkins, to Mr. Tucker, and asked him
to collect it, and give her $350 out of it, and apply
the rest on the note of the Home Savings Bank on
which he was surety. Mr. Tucker said he would apply
it in that way. She went back after awhile to get the
money, but Mr. Tucker told her he had not collected the
note.

The rest of the plaintiff's evidence related to the
rents of the property.

The deed in question was a general warranty deed
from Gerhardt and wife to Tucker, conveying the prop-
erty absolutely, subject only to the deeds of trust on
it. There was no recital in it to the effect that the
grantee assumed the payment of the debts mentioned
in the deeds of trust.

Defendant's testimony was to the effect that the
deceased, Mr. Tucker, in his lifetime had paid off all
the notes referred to except the Cook note, which the
administrator had since paid; that Gerhardt had been
in the employ of the Tuckers five or six years, and
on November 1, 1899, the defendant had a settlement
with him, and paid him about $150, which was the
amount the books showed was due him. At that time

Gerhardt said he was out of employment, and defendant agreed to employ him longer, and kept him until April, 1900; at the time of the settlement he made no reference to any claim on this property, and none was ever mentioned to defendant until this suit was brought; at one time after the settlement and after he had left defendant's employ he said that he had an interest in the Tompkins note. The testimony for defendant also showed that on executing the deed in question Gerhardt and Tucker went to the insurance agent, and Gerhardt told the agent that he had sold the property to Tucker, and asked the agent to transfer the policies he held on the property to Tucker, and they were transferred. The agent testified that they were not transferred to Tucker as mortgagee, but as owner.

The finding and judgment were for the defendant. The plaintiff appeals.

I.  Appellant complains that the court erred in holding that his chief witness was incompetent because he was attorney for Tucker, while respondent contends that the witness's whole testimony ought to have been excluded because, as the agent of Gerhardt, he conducted the negotiations and made the alleged contract, and since Tucker, the other party to the contract, is dead, this witness was incompetent to testify in Gerhardt's behalf under section 4652, Revised Statutes 1899.

The appellant has no room to complain of the exclusion of the evidence because the adverse ruling as to him only excluded what the witness might have learned in confidence from Tucker after he had been employed by Tucker. But the evidence showed that there was no employment by Tucker until after the whole agreement was made and then the employment related only to the drawing of the deed. The witness was allowed to give his version of the whole transaction up to the drawing of the deed and there is no

pretense that anything affecting the case occurred after that.

And the respondent has no ground of complaint because if he made any objection to the competency of the witness based on the statute, section 4652, the record before us does not show it. So far as we can gather from the abstract (which is all we have), the only objection made by respondent was on the ground that the witness was the attorney for Tucker and that, therefore, what he knew he acquired in professional confidence. The nearest the abstract comes to showing any objection on the ground of the witness's relation to Gerhardt is on page 21, where he is referred to as the attorney for the plaintiff, which, in the light of the question to which the objection applies, indicates a possible typographical error or slip of the pen. The question in effect is, What did Tucker tell you to tell Mr. Gerhardt? There could be no violation of professional confidence for Mr. Gerhardt's attorney to say what Mr. Tucker asked him to tell his own client. But the objection there made has no reference to the case covered by section 4652; it rests on the ground that it is a confidential communication to the plaintiff's attorney, of which, of course, the defendant cannot complain.

If, therefore, the witness was incompetent on the ground that he was the agent of one of the parties and as such made the contract and the other party is now dead, the defendant cannot complain of the ruling of the court in admitting the evidence because he did not interpose that objection.

II. Equity jurisprudence was established, not to violate or override the common law, but to more effectually promote the ends of justice in cases where the common law, held within limits by its own unbending rules, was unable to administer complete justice. Courts exercising equity powers have found greatest

pleasure in relieving the weak from the oppression of the strong under the strict terms of a contract made while the one was morally in the power of the other. Thus, at common law, a mortgagee's title became absolute when the day of payment came and the debt was not paid. But equity soon found in that condition a cause to interfere, and required a fair foreclosure proceeding before the debtor could be entirely cut out. In so doing the court of equity did not violate the law, did not deprive the mortgagee of any real right that the contract gave him, but required the contract to be limited to the only purpose for which it was made, that was security for the debt. Whilst a mortgage in form and in terms transferred the title in the property to the mortgagee, yet on its face there was sufficient to show that it was not intended as a sale either in the present or in the future, but was intended as a security only, and as a security only the equity court said it could be enforced. There was no difficulty in the case when the deed clearly expressed on its face that it was a mortgage, but cases arose in which, for reasons best known to the creditor and debtor, an absolute deed was given, with no written defeasance, yet with the distinct agreement between them that it was to be a mortgage only. When courts of equity came to deal with such cases there was a second barrier according to the letter of the law, to-wit, the Statute of Frauds, on the letter of which the creditor could stand and demand strict compliance with his contract. But in such case the court said to the creditor: the Statute of Frauds was designed to prevent fraud, not to promote it, and if the fact is that you took this deed, not as a purchaser, but as a creditor, to secure your debt, you commit a fraud in claiming to be a purchaser under it and you shall be held to the contract you really made, notwithstanding it is expressed in language that shows a different purpose. That is the particular principle in

equity jurisprudence upon which this plaintiff seeks to build his case.

But courts of equity do not presume fraud, or conclude on slight evidence that one who stands on his contract as it is written is guilty of fraud. So far as presumption goes it sustains the integrity of the written contract. The law presumes when men have reduced their agreement to writing in solemn form that the writing expresses the real contract, and that presumption will prevail until it is overcome by proof so clear and convincing that no room is left for a reasonable doubt. That is the law as pronounced by this court in many cases, as may be seen by reference to the following and the cases therein cited. Jones v. Rush, 156 Mo. 364; Mulock v. Mulock, Id. 431; Reilly v. Cullen, 159 Mo. 322; Chance v. Jennings, Id. 544.

No particular formula of proof can be laid down as all-sufficient to sustain a case of this kind; every case depends on its own circumstances, and the evidence to sustain it must be sufficient to convince the court beyond a reasonable doubt that the deed, judged in the light of its own surroundings at the time of its execution, was intended to be, not what it purports to be, but a mortgage. The evidence must not only be satisfactory as to its credibility, but unequivocal as to its terms and meaning, in which latter particular the evidence in this case was lacking.

The witness, who was an attorney at law, and who negotiated and concluded the whole business for the plaintiff as his agent and attorney, stated that the proposition he made to Tucker was that Tucker should assume the Barton notes, $7,000, which with the notes held by the banks on which he was surety, and the debt due himself, $450, amounted to $10,000, and that he was to be a preferred creditor and have a deed of trust. After two or three interviews, Tucker said he would not take a deed of trust because he did not want the notoriety that would attend a foreclosure. Then

the witness said that he would get Gerhardt to make a square deed, and when he was able to repay Tucker the amounts of the notes the latter would reconvey the property to him. Tucker was to pay out $10,000 and interest to take up Gerhardt's notes, and when the latter got on his feet and able to resume business he was to refund Tucker for his outlays, and the latter was to reconvey the property to him. If those were the terms of the verbal agreement, they indicate rather an agreement for a resale, than a mortgage, or at best they are of doubtful meaning.

There is no evidence to show that the property at the date of the deed in question was worth more than Tucker paid for it, or that it is worth more than that now. The plaintiff was insolvent when the deed was made, and the evidence does not show that he is now able to redeem the property even if the deed be decreed a mortgage. He makes no showing of either willingness or ability to redeem; on the contrary, in his petition he rather implies that he is not able to do so. After praying that an account be stated, showing the amount of his indebtedness under what he calls the mortgage, he prays, "And if the plaintiff is not able to pay said balance so found against him, that the same be declared a lien on said real estate" and that it be sold, and if it brings more than the amount found due to the defendant the surplus be paid to the plaintiff. His petition is rather in the nature of a bill to foreclose than one to redeem. He asks to have the land sold and if it should bring more than the so-called mortgage debt, he will be that much the gainer; if it should bring less, the defendant may carry the loss. Under the circumstances, even if the contract was as stated by the plaintiff's witness, he could not maintain his suit until he showed a willingness and an ability to redeem, whereas he has shown only a willingness to experiment with the market. [Lipscomb v. Ins. Co., 138 Mo. 17; Axman v. Smith, 156 Mo. 286.]

The plaintiff's evidence does not measure up to the standard which a court of equity requires when its jurisdiction is invoked to set aside a deed solemnly executed, and to give it a character totally different from that which the parties gave it. The plaintiff comes into court with one witness to prove a contract which he alleges was made for him by that witness as his agent with a man who is now dead. We have passed the question of the competency of the witness, because the objection on that ground was not made, but we can not pass the fact that we have heard only one side of the story and we ought to weigh the testimony with great caution. Against the evidence of that witness is the deed itself, the highest evidence of the contract. The rule of law, so often declared, that the proof in such case must be clear and convincing beyond a reasonable doubt would have no force if we should allow the breath of one witness under the circumstances of this case to destroy this deed.

There is a total absence of proof of any fraud or unfairness on the part of Tucker. He went into the transaction at the solicitation of the plaintiff who was threatened with suit, and who feared that if his property should be sold under the sheriff's hammer it would bring but little and leave his debts unsatisfied, and by this transaction the property was made to realize enough to extinguish all his debts. Now after Tucker is dead and cannot speak for himself, the court should receive with a good deal of caution evidence of the kind offered to upset his deed.

The chancellor had the correct view of the case. The judgment is affirmed. All concur, except *Marshall, J.*, not sitting.