BERTHA LOWERY, Appellant, v. FORREST D. GOSLIN, CLARA GOSLIN, BESSIE KELLY, LAKENAN M. PRICE, Trustee, and BOONE COUNTY NATIONAL BANK.—137 S. W. (2d) 555.

Division One, March 6, 1940.

*A. R. Troxell* for appellant.

*Harris, Price & Alexander* for respondents.

BRADLEY, C.—This cause was commenced to cancel a general warranty deed to certain described real estate in Boone County (Columbia), to reduce the lien amount of a deed of trust thereon, and (in a second count) to partition. The grounds alleged were lack of mental capacity on the part of the grantor in the deed, and failure of consideration. Plaintiff and defendants, Forrest D. Goslin and Bessie Kelly, are the son and daughters of Silas D. and Nannie E. Goslin, both deceased. Defendants Price and the Boone County National Bank are, respectively, the trustee and beneficiary in the deed of trust. The trial chancellor dismissed plaintiff's petition and she appealed.

The real estate involved was the home place of Silas D. and Nannie E. Goslin, and the title was in them, prior to the death of either, as tenants by the entirety. Silas D. died November 24, 1934, and Nannie E. died intestate March 6, 1936. The deed in question was executed by Nannie E. on August 31, 1935, and (reserving a life estate to the grantor) conveyed to defendants, Forrest D. and Clara Goslin. The consideration recited was "one dollar and other valuable considerations." The deed of trust was executed by Forrest D. and Clara on March 7, 1936, to secure their note to the defendant bank for $500.

Plaintiff alleged that at the time of the execution of the deed the grantor "was and had been for several months in such mental condition as not to comprehend or understand the meaning of any instrument, or its contents, or to acknowledge her said signature, and was mentally incompetent; that the said Forest D. Goslin, son of the said Nannie E. Goslin, at the time of the execution of said fraudulent deed, occupied a confidential relationship with the said Nannie E. Goslin; . . . that the said instrument was executed without any consideration whatsover, and that neither the one dollar, nor any other consideration was or has been paid for the said real estate which said deed purports to convey." The separate answers, except as to some matters, not necessary to state, were general denials.

After the death of her husband, Nannie E. continued, for about two months, to occupy the property involved. Thereafter, she lived for short periods, with her daughter, Bessie Kelly, in Columbia, with a sister in New Franklin, and at a rooming house in Columbia, and after the execution of the deed she lived in St. Louis with her son, defendant Forrest D., until her death.

Without naming the witnesses (all lay) who testified for plaintiff, we set out the principal incidents respecting the conduct of Mrs. Goslin, which incidents are relied upon by plaintiff to show that her mother was not mentally capable to make the deed in question. On

one occasion, Mrs. Goslin forgot about leaving a bundle of clothes at a store; she put her clothes on, at least once, wrong side out; got lost lots of times "when she was going places;" kept a butcher knife under her pillow when a girl was staying with her; would get up at night and walk around over the house; attempted to put her pocket book in the stove; at 1:15 A. M., one night she had her bed moved and then lay down on the naked springs "and stayed there about four hours;" would want to "wander over the streets;" she could not "cook a meal or dress herself and could not go any place by herself;" was not able to understand an attorney who endeavored to explain to her what would have to be done before the Workmen's Compensation Commission, after her husband's death (husband was drawing compensation for injury) before she could draw the balance remaining at the husband's death; was not able to learn how to hook up an electric plate with a light socket; was confused in finding the door to her room at a place she was staying; she "looked staring with her eyes and she was very nervous."

Also, plaintiff's evidence tended to show that Mrs. Goslin had said that she wanted her children to share alike in what she had, and that defendant, Forrest D., after the death of his father, and prior to the execution of the deed, said, in effect, that his mother's mind was not right, and A. F. Kelly, husband of defendant, Bessie Kelly, testified that on January 1, 1935, more than a year before Mrs. Goslin's death, defendant, Forrest D., said that "there ought to be some way of keeping Mrs. Lowry (plaintiff) from getting any of the estate at all."

On the other hand, A. G. Spencer, cashier of defendant bank, testified that he had known Mrs. Goslin for many years; that he saw her on several occasions during the spring and summer of 1935; that he, from time to time, loaned her "a little money" while she was waiting for some money (compensation) she expected; that Mrs. Goslin, on the occasion when the deed was acknowledged, came in the bank with her son, Forrest, and acknowledged the deed; that she told him that she was going to deed her property to Forrest, subject to her life estate. And Spencer testified that on this occasion and in the absence of the son, Forrest, he asked Mrs. Goslin "if she understood what she was doing thoroughly, when she deeded the land that way, and she said she did." Spencer, as a notary, took the acknowledgment to the deed, and testified further that from his contacts and business dealings with Mrs. Goslin, she was, in his opinion, "competent to transact her business on the day she made the deed and at all times" when he saw her.

Dr. George A. Bradford testified that he had been Mrs. Goslin's physician for over forty years; that he continued to be such until she went to St. Louis about September 1, 1935; that he saw her "at frequent intervals" during the spring and summer of 1935; that he saw her about January 1, 1935, at Bessie Kelly's and on that occasion she

"had a high fever and was pretty sick, and talking at random." Dr. Bradford also testified that in the year 1935, Mrs. Goslin told him that she wanted to deed her property to Forrest; that he (Forrest) had been good to her, and that she asked him what he thought about her doing that, and that he told her that he did not know; that he was "her doctor and a mighty poor lawyer." Dr. Bradford further testified that he saw Mrs. Goslin just a few days before she went to St. Louis, and that after she went to St. Louis, he received from her two letters, which were destroyed, and that she said (in a letter) that "they (Forrest and family) were mighty good to her and she was having a good time resting." Dr. Bradford said that in his opinion Mrs. Goslin was "of sound mind and competent to transact her own business."

On August 19, 1935, Mrs. Goslin wrote a letter to her son, Forrest, and his wife, a photostatic copy of which is in the record. The letter certainly reflects that its author at least was fairly well mentally. In this letter she said, among other things, that, when he came to Columbia, she was going to turn the place over to him, because she was too nervous to bother with it. There was other evidence offered by defendants, but it is not necessary to further state the evidence.

There is no claim that any money consideration was paid for the property. If Mrs. Goslin was of sound mind and wanted to give this property to her son and his wife, she had the right to do so. There is nothing in the record that would justify us in overturning the finding of the learned chancellor below, who saw and heard the witnesses and to whose finding we should and do give due deference. [Green v. Wilkes et al. (Mo.), 109 S. W. (2d) 859, l. c. 864; Fessler v. Fessler et al., 332 Mo. 655, 60 S. W. (2d) 17, l. c. 23, and cases there cited.]

The judgment should be affirmed and it is so ordered. *Hyde* and *Dalton, CC.,* concur.

PER CURIAM:—The foregoing opinion by BRADLEY, C., is adopted as the opinion of the court. All the judges concur.