L. E. Trotter, Appellant, v. Larcena Carter and J. C. Green.—No. 39063.—183 S. W. (2d) 898.

Division One, December 4, 1944.

*Howard R. Maness* and *Macye Maness* for appellant.

*Chas. B. Butler* for respondents.

BRADLEY, C.—Action to set aside a sheriff's deed to defendant Larcena Carter made upon the foreclosure of a deed of trust

where the sheriff was acting as trustee. The trial court found for defendants and plaintiff appealed.

These contentions are made: (1) That plaintiff's demurrer to Mrs. Carter's answer should have been sustained; (2) that plaintiff's motion for judgment on the pleadings should have been sustained; (3) that the note secured by the deed of trust being lost and plaintiff not indemnified, foreclosure could be by suit only; (4) that deed should be set aside because a fraud, in effect, was practiced on plaintiff by the sheriff which caused him (plaintiff) to abandon proceedings to enjoin the sale; (5) that the land was sold at such an inadequate price that the deed should be set aside for that reason; and (6) that the foreclosure sale was void because not made at the request of the legal *holder* of the note.

Plaintiff is the son of defendant Larcena Carter; defendant Green is the sheriff; he did not answer. Hereinafter, unless it otherwise appears, the term defendant has reference to Mrs. Carter. The land involved is 119 acres in Ripley County. It was homesteaded by defendant's grandfather and inherited by her from her father. She lived on the place "practically all" her life. At the time of the trial (December 18, 1943) defendant was 73; she has 2 sons, 6 daughters, all married. The foreclosure sale was on May 21, 1943, and the land was sold to defendant on a bid of $600.

September 17, 1930, defendant conveyed the land by quitclaim deed to plaintiff. The deed recites a consideration of "other valuable consideration and one dollar." At the time of the execution of the deed, plaintiff gave to defendant his note for $1200 due in 5 years, and to secure the note he gave the deed of trust foreclosed. No payment was ever made on the note. Plaintiff, in effect, claims that defendant gave him the land. The deed of trust was not recorded until February 7, 1942.

At the time of the foreclosure plaintiff was working in St. Louis. He saw notice of the foreclosure published in a Doniphan (county seat) paper; went to Doniphan on Sunday before the sale on Friday, and employed counsel to bring proceedings to enjoin the sale. While at Doniphan compromise was talked; plaintiff got Ed Brooks, a son in law of defendant, to see her. Brooks reported that defendant would pay plaintiff $150.00 if he would deed the land back to her. Plaintiff decided to do that "if she (defendant) produced the note" and a deed was drawn up. Then plaintiff got Herman Broyles to see defendant about the $1200 note, as we infer. Broyles reported that defendant "didn't have the note" (defendant testified the note was lost). Plaintiff was advised, he said, that the sheriff couldn't sell "unless she (defendant) produced the note", and asked the sheriff about that. According to plaintiff the following conversation between the sheriff and plaintiff occurred as a result of the inquiry:

" 'Well, I (the sheriff) could (sell without the note), but I wouldn't know who to turn the money over to', and I (plaintiff) said, "I agreed to deed place back to her if she produced the note', and he said, 'I won't have nothing to do with it', and I said, 'I would see Mr. Delco and deed the property back if she produced the note', and he said, 'Fine, I won't have anything to do with it.' That was on Wednesday night and Friday they sold it and I did not know about it until a week. . . . Q. Just tell the court what the sheriff said about the sale of the land? A. He said he 'could sell the land, but he wouldn't know who to pay the money to.' Q. Did he tell you to go back to St. Louis? A. He did, and I said, 'Well, I can go back to St. Louis?', and he said, 'Yes.' "

Plaintiff's wife testified: "Q. Just tell the court whether or not you were present when the sheriff had a conversation with your husband. A. Yes, sir, I was, on the day before the sale was to come off on the 21st; we talked and my husband told the sheriff that he had come out to settle with my (his) mother, but she didn't have the note, and the sheriff said, 'If she hasn't the note, I wouldn't know who to give the money to', and my husband said, 'Then you won't conduct the sale?', and he said, 'No', and my husband said, 'I will go back to St. Louis', and the sheriff said, 'All right, you do that; I won't conduct the sale.' . . . After the sale I got word he went ahead with it and then I talked to you (Mr. Maness) and then to the sheriff and I said, 'I thought you wouldn't go ahead with it', and he said, 'I did', and Mr. Butler (defendant's counsel) said, 'It was on record', and the sheriff told me that she (defendant) made affidavit in regard to it (loss of the note) and that it wouldn't come up against my husband." And then on cross-examination, this: "Q. The sheriff told you that day that Mrs. Carter made an affidavit that the note was destroyed? A. No, that she made an affidavit that the note was lost, but that it wouldn't ever come up against him."

Ed Brooks testified: "Elvis Trotter (plaintiff) and his wife and I were talking on the sidewalk and Mr. Green (the sheriff) drove up and stopped there and they discovered—Elvis Trotter had discovered that this note could not be produced and someone had told him 'that they didn't think the sheriff could sell this place without the note', and he asked the sheriff 'if he could sell the place without the note', and the sheriff said, 'No, I can't sell this place without the note.' Q. Then what did Mr. Trotter say? A. I didn't stay very long after that. Q. Did Mr. Green say anything about (plaintiff) going back to St. Louis? A. Not in my presence. Q. Did he say that he wouldn't sell the place? A. He said he couldn't sell the place because he wouldn't know who to pay the money to."

After the conversation with the sheriff plaintiff told his attorney (Mr. Maness) "that we would drop it and not have anything more to do with it", and went back to St. Louis.

The sheriff testified: "Q. Did you have a conversation with L. E. Trotter and his wife the day before it (the land) was sold and did you make the statement that you wouldn't sell the land next day? A. Not that I remember of. Q. What did you tell them? A. I was asked by Mrs. Trotter if I would go ahead and sell the land and I said that if it was advertised I would sell it, but I wouldn't deliver any money if it brought over the amount. He (plaintiff) informed me that the note was lost. Q. I will ask you if Mrs. Carter made an affidavit as to the note? A. Yes, sir. Q. Have you it with you? A. No, sir. Q. Can you get it? A. It will take some time. Q. Did she (Mrs. Carter) make an affidavit that the note was lost and not in the hands of any one that had a right to it? A. Yes, sir. . . . Q. Did you tell him (plaintiff) you were going ahead with the sale? A. The best I remember. The Court: Mr. Green, there was never any agreement or understanding between you and Mrs. Carter as to the disposition of this land? A. No, sir. Q. Have you any interest in the land? A. No, sir. Q. There was no intention on your part to induce Mr. Trotter to leave town or go back to St. Louis? A. No, sir. Q. Do you know what impression he got by what you said? A. No, I do not."

The quitclaim deed to plaintiff was recorded, but defendant remained in possession of the land; paid no rent; plaintiff paid the taxes. Defendant testified that she did not intend "to pass title to him (plaintiff) by that deed—for him to keep"; that she made the deed because she had "signed a note for a couple of fellows", and had an idea that she would be sued and her place sold; that she did not "talk to any of the rest of the" children about it; "I came by my daughter's (Mrs. Brooks) and told her what I was going to do and she said, 'Maybe that is best', and none of the rest of the children knew." Plaintiff said that he was at his mother's on a visit when the deed and note and deed of trust were executed, and that his mother said that she had talked it (about deeding place to plaintiff) over with Mrs. Brooks and the other girls (defendant's daughters) and that she had decided to deed the place to him because, she said, he had done more for her than the others. Plaintiff said he asked his mother for the deed after its execution and that she said that she had better keep it because he ran around.

The deed of trust recited that the $1200 note was "given as part of purchase money for the lands herein described", and plaintiff says that of this he said, "Mother, why do you have that $1200 put in there? Do you expect me to pay $1200 for this place?", and that his mother said, "No, son, that just shows people, if any one asks me; I can mark on the back of it that you paid me $100 and $75." He

said he just trusted his mother and thought that it was all right. In making application for old age assistance, defendant said that her "present or future interest in personal and real property" was $150, and that she did not have any "notes or other negotiable securities." It appears, however, that she was not receiving old age assistance.

■ The complaint on overruling the demurrer to defendant's answer is not briefed and will be considered as abandoned. The motion for judgment on the pleadings arose in this way: Plaintiff filed an amended petition after the answer had been filed, and the answer was not refiled. Plaintiff's amended petition made no change in the issues, hence it was not necessary to refile the answer or to file an amended answer. Scheerer v. Waltner et al., 225 Mo. App. 837, 29 S. W. (2d) 193, l. c. 195.

■ The note being lost was defendant required to indemnify plaintiff or be compelled to foreclose by suit? Plaintiff makes reference to Secs. 1114, 1115, R. S. 1939, Mo. R. S. A., Secs. 1114, 1115, dealing with the subject of a suit based on a lost note or bill of exchange, but these sections make no reference to the point here concerned. Sec. 3450, R. S. 1939, Mo. R. S. A., Sec. 3450, provides that "deeds of trust in the nature of mortgages of lands may, in addition to being foreclosed by suit, be also foreclosed by trustee's sale at the option of the holder of the debt or obligation thereby secured and the mortgaged property sold by the trustee or his successor in the same manner and in all respects as in case of mortgages with power of sale. . . ." Secs. 3463 et seq., R. S. 1939, Mo. R. S. A., Secs. 3463 et seq. prescribe notice of sale, contents thereof, publication, etc.

There is nothing in any statute suggesting that if the note, secured by a deed of trust with power of sale, is lost, then foreclosure can be had only by suit. We do not find any Missouri case directly ruling the question, but "the trustee in a deed of trust is in no sense a custodian of the security in which he is named as trustee and there is no occasion for his having it (the note) in his possession or sight" when conducting foreclosure sales. Dolan v. Talle et al. (Mo. App.), 263 S. W. 244, l. c. 246. In Kirkwood Realty, Ins. & Adjustment Co. v. Henry et al., 349 Mo. 522, 162 S. W. (2d) 600, l. c. 603, it is said that "the trustee (in a deed of trust) was entitled to know that the note was in the possession of the person requesting him to act", but the language was used arguendo in dealing with a situation where there was a question raised as to whether the trustee named in the deed of trust had refused to act. There is a dearth of authority on the question here or else we, as well as counsel, have not been able to find it. In Bibb v. Crews, 113 Ala. 617, 21 So. 341, it was held that where the mortgage has been recorded (the present deed of trust was recorded) loss of the note will not affect the power of sale in the mortgage. And in Sharp's Administrators v. Cutler, 25 N. J. Eq. 425, it was held in a suit to foreclose a lost mortgage and note that

the defendant could not defeat payment on the ground of refusal to indemnify him. See also 3 Jones On Mortgages (8th Ed.), Sec. 1890.

We rule that the loss of the note did not entitle plaintiff to be indemnified as a condition precedent to foreclosure of the deed of trust by the sheriff as acting trustee.

Should the deed be set aside because of the alleged conduct of the sheriff? The judgment recites that the court found for defendant "for want of equity" on the part of plaintiff. Plaintiff's evidence tended to show a gift of the land to him and defendant's evidence, the deed of trust and the note, tended to show the contrary. In view of the judgment we may infer that the trial chancellor was of the opinion that the quitclaim deed was not one of gift; that the $1200 note was bona fide, and that plaintiff's case was therefore without equity. The question as to gift or purchase was one to be determined from the evidence, including of course, the note and deed of trust. And without being specific we might say that there was evidence concerning plaintiff which would tend to disparage his veracity. The cause is here for trial de novo, but in an equity case we give due deference to the finding of the trial chancellor. Lowery v. Goslin et al., 345 Mo. 1024, 137 S. W. (2d) 555, l. c. 557; Green v. Wilks et al. (Mo. Sup.), 109 S. W. (2d) 859; Fessler v. Fessler et al., 332 Mo. 655, 60 S. W. (2d) 17, l. c. 23, and cases there cited. However, where the finding of the trial chancellor is overwhelmingly against the weight of the evidence we may rule contrary to the trial chancellor. Peikert v. Repple et al., 342 Mo. 274, 114 S. W. (2d) 999, l. c. 1002, and cases there cited. But there is nothing here that would justify overturning the trial chancellor's finding in effect that the quitclaim deed was not one of gift, and that the $1200 note was bona fide, and that plaintiff's case was without equity.

Should the sale be set aside because of inadequacy of the sale price? The deputy county assessor who had known the land "close to 60 years" testified that "it has growed up and no improvements for several years and buildings are poor"; that in 1942 the land was assessed at $450 and that he thought that was a fair value; and that he wouldn't give $450 for it. Plaintiff placed the value between $1800 and $2400.

There is no claim that the sale was unfairly conducted, or that bidding was chilled. The only complaint on unfairness goes to the charge that the sheriff deceived plaintiff, as appears, supra. And plaintiff does not especially complain because he was not present at the sale, but because he, on account of the alleged deception, abandoned his proceedings to enjoin the sale. No grounds for enjoining the sale are suggested, but we may infer that plaintiff had in mind the point here made, in effect, that the quitclaim deed was a gift and that the $1200 note secured by the deed of trust was not a bona fide

debt. The evidence as to value is conflicting, but if it be conceded that the value is as given by plaintiff, such would not be sufficient to justify setting aside the sale because of inadequacy of sale price.

"Mere inadequacy of price is not sufficient ground for setting aside a sale under a power in a mortgage or trust deed where the sale was lawfully made and rightly conducted, with full opportunity for competition· in the bidding, and without fraud, ·partiality or oppression. . . . Inadequacy of price is, however, always a circumstance to be considered in connection with other grounds of objection to the sale, and will be sufficient to justify setting the sale aside when coupled with any other circumstance showing unfairness, misconduct, fraud, or even stupid management resulting in the sacrifice of the property." 41 C. J., p. 1026, Sec. 1490.

"The rule is well settled in this state that mere inadequacy of price is not sufficient to set aside a sale of the character here in question, unless so gross as to raise the inference of fraud or imposition." Judah et ux.. v. Pitts et al., 333 Mo. 301, 62 S. W. (2d) 715, 1. c. 720; Harlin v. Nation, 126 Mo. 97, 27 S. W. 330; Roby v. Smith, 261 Mo. 192, 168 S. W. 965. In the Judah case the sale price was about one third of the alleged value; in the Harlin case about one fifth; in the Roby case about one fourth. All these sales were sustained against a complaint of inadequacy of sale price. In the present case the sale price was one third to one fourth of the alleged value, assuming that the value is as claimed by plaintiff. It is quite clear that inadequacy of sale price is not sufficient to set aside the sale, and we so rule.

▇▇ Was the foreclosure sale void because not made at the request of the legal *holder* of the note? The term *holder*, as used in our negotiable instrument act, means "the payee or indorsee of a bill or note, who is in possession of it, or the bearer thereof." Sec. 3209, R. S. 1939, Mo. R. S. A., Sec. 3209. The deed of trust here involved provided that the trustee named therein, or the sheriff, as therein provided, could upon default foreclose "at the request of the legal holder of the said note" secured by the deed of trust. The note was lost and therefore the foreclosure sale was not made at the request of the legal *holder* of the note, but it was made at the request of "the holder of the debt or obligation" secured by the deed of trust. See Sec. 3450, R. S. 1939, cited supra. According to plaintiff the note was not bona fide, and admittedly he had never paid a cent on it nor offered to do so. Nor does he suggest redemption to which we make reference, infra. In this situation and in view of the court's finding that plaintiff's case was without equity, he is in no position to complain that the foreclosure sale was not made at the request of the legal *holder* of the note.

▇▇ The question of offering to redeem, as a condition precedent to setting the sale aside, would be suggested from the present record, but such question is not considered in the briefs. See Lipscomb et al. v.

New York Life Ins. Co., 138 Mo. 17, 1. c. 24, 39 S. W. 465; Axman et al. v. Smith et al., 156 Mo. 286, 1. c. 291, 57 S. W. [903] 105; Gerhardt v. Tucker et al., 187 Mo. 46, 1. c. 58, 85 S. W. 552; McNatt et al. v. Maxwell Inv. Co. et al., 330 Mo. 675, 1. c. 684, 50 S. W. (2d) 1040, 1. c. 1044. The McNatt case was to set aside a sale under a deed of trust and to cancel deeds made in pursuance of the sale. In that case the court said [50 S. W. (2d) 1. c. 1044]: "An insurmountable obstacle to plaintiffs' recovery is that they do not seek to do equity. They seek to set aside the trustee's sale. In all such cases the mortgagor must offer to redeem from the incumbrance, or at least put the purchaser in statu quo. That is true, even if there was fraud in procuring the sale . . ."

The judgment should be affirmed and it is so ordered. *Dalton* and *Van Osdol, CC.*, concur.

PER CURIAM:—The foregoing opinion by BRADLEY, C., is adopted as the opinion of the court. All the judges concur.