ANNA AMALIA STONE, ROSE L. LAUMANN, FLORENCE M. MORRIS, LENORA HECKRODT, FRED C. BIRK and WILLIAM L. BIRK v. DORA L. HOHMANN, whose full correct name is LEISE DORA HOHMANN, ROBERT A. HOHMANN and LENORA LOUISE YOUNGER, Appellants.— 146 S. W. (2d) 551.

Division One, January 6, 1941.

*W. M. Hilbert, Otto P. Shanks* and *N. W. Simpson* for appellants.

*Barker Davis* for respondents.

CLARK, J.—Alleging mental incapacity of the grantor, undue influence by the grantees and failure of consideration, plaintiffs sued to set aside a deed purporting to convey real estate. The chancellor set the deed aside and defendants have appealed.

Appellants' sole assignment of error relates to the sufficiency of the evidence, and their "points and authorities" consist of quotations from our decisions on the same subject. In the argument portion of their brief, appellants discuss the sufficiency of the evidence only as it pertains to mental capacity. Respondents contend that the

proof sustains the decree both for mental incapacity and undue influence.

■ The case being in equity, we try it *de novo,* but as the decree represents the conclusion of the chancellor upon conflicting oral testimony, we must accord due weight to the chancellor's finding. [Lastofka v. Lastofka, 339 Mo. 770, 99 S. W. (2d) 46.]

Peter Birk lived for ninety years and died on February 28, 1938, leaving seven adult children, the six plaintiffs and one of the defendants. For many years he engaged in mercantile pursuits and accumlated considerable real and personal property, retiring from business in 1918. His wife, for more than sixty years, died on June 2, 1934. On November 20, 1934, when about eighty-six years of age, he executed the deed now under consideration, the grantee being his daughter, Dora Hohmann, now one of the defendants. The deed purports to convey two small parcels of real estate, having a gross rental value of about $18 per month, recites a consideration "of love and affection and the needs of the party of the second part," and further states: "I am making this deed to my said daughter for the reason that she is weak and sickly and unable to make her own living if she should be called upon to do so, and I want to take special care of her, and for the reason also that she is affectionate and kind to me and will take care of me during the remainder of my life. In the event that my said daughter shall not have disposed of said real estate at the time of her death, then upon her death said real estate shall become vested in remainder in her husband Robert A. Hohmann and her daughter Lenora Louise Younger and their heirs, in fee simple. It is a condition of this deed that my daughter shall take care of me within reason in her home or otherwise as long as I live."

■ We summarize the evidence. For the plaintiffs: Carl Birk (a grandson of Peter and a son of one of the plaintiffs), graduated in medicine in 1934 and has practiced in St. Louis since; lived about a block from his grandfather's house at Canton until he was twenty-one years old in 1929; After that saw his grandfather, Peter Birk, infrequently, but saw him in June, 1934, and three or four times thereafter; testified that Peter was often unable to recognize his children and other near relatives, some of whom lived in daily contact with him in the same house; that in his later years he could not converse intelligently; that his memory was faulty, especially as to recent events; that he suffered from senile dementia for ten years, progressively growing worse until his death; that, in the opinion of the witness, Peter Birk was of unsound mind at all times from about 1932 until his death. Mrs. Stone, Mrs. Laumann, Mrs. Morris, Mrs. Heckrodt, Fred Birk and Earl Birk (all plaintiffs and children of Peter) and Don Stone (a son of one of the plaintiffs), testified to numerous times when the old man failed to recognize his children, other relatives and friends; that he frequently got lost within a block

or two of his house and had to be directed or led home; that his memory was faulty; that he could not carry on a sustained, intelligent conversation; that he transacted no business for many years prior to his death, this being attended to by one or another of his children, sometimes by defendant, Robert Hohmann; each of these witnesses expressed an opinion that Peter Birk was of unsound mind prior to and at the date of the deed. Anna Helms, who was employed in the Birk home for some time in 1934, testified as to the failure of Peter to recognize his relatives and friends, faulty memory, getting lost, etc. Similar testimony was given by many other neighbors and friends of Mr. Birk; Dr. Jennings and Dr. Pudliner, both practicing physicians, in response to hypothetical questions, gave their opinions that Peter Birk was of unsound mind at the date of the deed.

For the defendants: Frank Haney, an attorney, testified that he knew Peter Birk for thirty years; that he drew a will, a codicil and a deed for him in 1932 and other legal documents prior to that year; that he was uncertain as to whether he met or talked with Mr. Birk during 1934 except on November 20th when he prepared the deed now in controversy; on that date witness was called by Robert Hohmann to come to his store and prepare a deed for Mr. Birk; that Robert Hohmann, Dora Hohmann and Birk were present; that Birk told of his affection for his daughter, Mrs. Hohmann, and her husband, of his gratitude for their services to him, and of his solicitude for Mrs. Hohmann because of her affliction (the evidence shows she is an epileptic); that he wished to deed the two pieces of real estate to Mrs. Hohmann with a provision that she would take care of him the rest of his life; that witness prepared the deed and read it to Mr. Birk; that Hohmann then asked witness to change the date to June 10, 1934, which witness did; that Mr. Birk then signed and acknowledged the deed; witness gave his opinion that Mr. Birk was of sound mind. A number of other lay witnesses, some who saw Mr. Birk often and others infrequently, testified either that they believed him to be of sound mind or that they saw nothing in his conduct to indicate unsoundness of mind.

The deed was recorded November 23, 1934, but plaintiffs denied they had knowledge of it until after Mr. Birk's death; the real estate was assessed in his name until his death, the rents collected for him by his children, and the maintenance paid out of his funds by his daughter, Mrs. Morris.

Appellants and respondents have cited many decisions relating to the degree of mental capacity necessary for the execution of a deed and the quantum of proof which will justify a court in canceling a deed for mental incapacity of the grantor. Typical of such decisions are: Shaw v. Butler, 78 S. W. (2d) 420; Lastofka v. Lastofka, 339 Mo. 770, 99 S. W. (2d) 46; Morris v. Morris, 4 S. W. (2d) 459;

Hershey v. Horton, 322 Mo. 484, 15 S. W. (2d) 801; Fessler v. Fessler, 332 Mo. 655, 60 S. W. (2d) 17; Franklin v. Moss, 101 S. W. (2d) 711.

There is no dispute between the parties as to the principles of law governing this case except as to one point. It is conceded that a higher degree of mental capacity is required for the making of a contract than for the making of a will or voluntary conveyance. Appellants contend that the standard which should be used in the instant case is that governing a voluntary conveyance in consideration of love and affection, while respondents say that the deed should be considered as a contract because of the clause therein requiring the grantee to care for grantor during his life. [See Jones v. Thomas, 218 Mo. 508, 117 S. W. 1177; Ennis v. Burnham, 159 Mo. 494, 60 S. W. 1103.]

In our view, it makes no difference whether we regard the deed as a contract or a voluntary gift, for, on either view, the evidence supports the decree.

True, much of the evidence indicating Mr. Birk's mental unsoundness was furnished by those who are interested in canceling the deed, but the chancellor saw and heard the witnesses and was in a better position to pass upon the weight of their testimony than we are. Certain facts were undoubtedly proved: Mr. Birk had transacted little, if any, business for many years; his memory was failing; he was unable to carry on a connected conversation; he constantly failed to recognize his near relatives living in the same house with him; he frequently got lost within a block of the home where he had lived for more than fifty years. Failing memory alone does not prove insanity, nor does failure to recognize persons not often seen; but failure to recognize the members of one's family and failure to know the location of one's home when only a few yards distant, unexplained by any evidence of impaired vision, does furnish some indication of mental unsoundness.

One significant fact was brought out in the cross-examination of defendants' witness, Haney. He stated that he drew the deed on November 20th, but, at the request of Mr. Hohmann and in the presence of Mrs. Hohmann, he changed the date to June 10th. No explanation was offered for this change. Is it not a fair inference that defendant and her husband realized that Mr. Birk's mind was failing and that the deed would more likely be sustained if given an earlier date? They could not place the date much earlier than they did, because Mrs. Birk was alive until June 2nd and her signature would have been necessary if the deed had been dated before then.

After a careful review of the record, we hold that the decree should be and is hereby affirmed. All concur.