MARY M. HUEGEL, Appellant, v. HARRY E. KIMBER, Respondent, No. 41242—224 S. W. (2d) 959.

Division One, November 14, 1949.

Rehearing Denied, December 12, 1949.

*R. Carter Tucker, John Murphy, William H. Wilson, J. Gordon Siddens* and *Tucker, Murphy, Wilson & Siddens* for appellant.

*John S. Lodwick, Arthur R. Kincaid* and *Francis G. Hale* for respondent.

VAN OSDOL, C.—Action to cancel and set aside the contract of sale and the sale of the stocks of merchandise and fixtures of two stores in Excelsior Springs. As grounds for relief plaintiff, vendor, alleged that the consideration was inadequate and that defendant "knowingly and fraudulently influenced, induced and caused plaintiff" to sign the contract while plaintiff was seriously ill, physically weak, and mentally incapacitated. Plaintiff testified the properties were worth an amount which is much more than $7500 in excess of the $15,000 consideration received.

Defendant, purchaser, by answer admitted his purchase of the properties for the agreed consideration of $15,000; and alleged his payment of the purchase price, and his possession of the properties. Defendant further prayed for an order restraining plaintiff from re-engaging in a business in violation of the terms of the contract of sale whereby plaintiff had agreed "as a part of the consideration of the purchase price, not to own, engage, clerk or work in the same, or similar business in the City of Excelsior Springs within five years" from date.

The trial chancellor dismissed plaintiff's petition, and rendered judgment on defendant's claim for injunctive relief.

It is plaintiff-appellant's contention the trial court's judgment is against the weight of the evidence, not supported by the evidence, and for the wrong party. Plaintiff-appellant urges the trial chancellor did not take into account the proof of inadequacy of consideration and decided the case on the erroneous theory plaintiff was only required to have such mental capacity as is the standard of a testator in making a will. (It must be conceded a higher degree of mental capacity is required for the making of a contract than for the making of a will. Stone v. Hohmann, 347 Mo. 184, 146 S. W. 2d 551.) Plaintiff further says the proof of her illness and mental impairment, together with the shown inadequacy of consideration, entitles her to recover. She urges the trial court's erroneous theory is emphasized by a given instruction informing the (advisory) jury as to the existence of the presumption of sanity, and that plaintiff had the burden of proving unsoundness of mind by clear, cogent and convincing evidence, beyond a reasonable doubt. And plaintiff-appellant further contends the decree of injunction is not supported by evidence, and is uncertain, indefinite, and not subject to clear understanding.

Defendant-respondent contends that plaintiff's petition was properly dismissed—plaintiff's case was not sustained by evidence of the quality essential to her recovery; that even though the instructions were erroneous, error cannot be predicated upon the court's instructions—the finding of the jury in an equity case is but advisory; and that, the contract of sale having been upheld, the trial court had no discretion, but was obliged to render injunctive relief to defendant inasmuch as plaintiff admitted she is now conducting a business similar to those she formerly conducted in the stores sold to defendant.

About twelve years ago plaintiff, Mary M. Huegel, established a gift or jewelry store in Excelsior Springs. The store was known as Ye Old Colony Shoppe. In 1944 plaintiff purchased a jewelry store of defendant, Harry E. Kimber, for $3000; she continued the operation of this store as "Huegel's Hall of Gems."

Near the middle of July 1947 plaintiff became ill and was admitted to the Excelsior Springs Hospital where she remained until August 8th, after which date she was confined at her home for one week and then was admitted "on a stretcher" to the Mitchell Clinic Hospital at Excelsior Springs. At the time she was very weak and sick—in a critical physical condition. Tests tended to show a diabetic tendency, and a diseased colon. She was thought to have a "malignant cancer," and was not expected to live. Witnesses for plaintiff testified that she remained critically ill for more than two weeks, during which time she was extremely anemic, often nauseated, at times helpless, "at intervals" in a semicomatose condition; sometimes she did not recog-

nize her relatives; had hallucinations, "talking irrationally." A physician, who treated plaintiff, stated her anemic condition was such that, in his opinion, "it retarded her perception mentally"; and nurses and relatives of plaintiff testified of her severe illness, physical weakness, and stated their opinions plaintiff was of unsound mind.

August 26, 1947, attorneys Morse and Moore collaborated in preparing a contract of sale and a bill of sale of plaintiff's two stores to defendant. The negotiations preliminary to the preparation of these instruments were between defendant and plaintiff's brother, one Edward Walter, the active president of a bank in Glenwood, Minnesota, who had come to Excelsior Springs, it seems, upon news of the illness of his sister, plaintiff. The terms of the contract were formulated by the attorneys "under the instruction" of plaintiff's brother. Mr. Moore represented defendant. Mr. Morse testified he had acted as plaintiff's attorney since about the first of July. 1947. He stated he had been directed by plaintiff to prepare (and he did prepare on July 31st, we infer) a power of attorney whereby plaintiff's brother was to be designated her attorney in fact. There was no direct proof plaintiff executed the power of attorney. The document was not introduced into evidence. Mr. Morse further testified he had discussed with plaintiff in "the general terms, that her brother was going to negotiate a sale at the time of the power of attorney." August 27th, the two attorneys; plaintiff's brother; and the purchaser, defendant, went to plaintiff's room in the hospital and there the contract and bill of sale were signed by the parties, plaintiff and defendant.

It was plaintiff's testimony that when she signed the instruments she did not know what she was doing, and continued to be unaware of the transactions even after her discharge from the Mitchell Clinic Hospital on September 25th and during a long convalescence and until sometime in late December 1947 or early January 1948 when she regained part of her strength and learned of the sale and the terms thereof. Although she had theretofore seen defendant and his wife in the stores, "about the first of the year" she first learned "how they happened to be there" and was "quite surprised." She conferred with counsel, and instituted this action February 12, 1948.

Plaintiff testified the "cost price" of the merchandise contained in the Hall of Gems was between $40,000 and $45,000 exclusive of fixtures and furnishings worth $2500 to $3000. She further testified the cost of the merchandise plus the value of the fixtures in Ye Old Colony Shoppe was $6000.

Three of defendant's witnesses testified as to plaintiff's condition as it appeared to them on August 27th. These witnesses were the attorneys, mentioned supra; and a physician, who owns and operates Mitchell Clinic Hospital. In effect, the attorneys (and defendant, who was also present) testified that, when plaintiff signed the instru-

ments in question, she appeared fully aware of what she was doing; that the contract and bill of sale were read to her before she signed them ("her brother held a magazine for her to write on"); and that she was of sound mind and competent. Plaintiff's brother, Edward Walter, (as indicated) was present at the time. Although in attendance at the trial, the brother did not testify. The physician testified of observing plaintiff and conversing with her on August 27th; he stated his opinion that plaintiff was of sound mind.

Other facts will be examined in the course of this opinion.

■ The trial chancellor submitted to a jury the question, "Did the plaintiff on August 27, 1947, have sufficient mental capacity to understand the nature of the transaction mentioned in evidence and with such understanding did she voluntarily enter into and consummate the same?" The jury found plaintiff was of sound mind and fully comprehended what she was doing when she signed the instruments.

As stated, the trial chancellor impaneled a jury to advise him upon the issue of plaintiff's mental competency. Even though the instructions submitting the issue of mental condition were considered erroneous, the trial chancellor's findings and decree were not necessarily wrong. Error is not to be predicated upon the instructions. The instructions are of value to us ■ only in such respects as they may show the trial chancellor's theory. In the trial of an action in equity, a chancellor may, if he sees fit to do so, submit issues of fact to a jury, but in such event the findings of the jury are only advisory. The chancellor may adopt the findings or not as he chooses. And when the cause comes up on appeal for review, this court tries the case anew and must find the facts from the evidence as it would where the chancellor tries the case without the assistance of a jury. Troll v. Spencer, 238 Mo. 81, 141 S. W. 855; Bouton v. Pippin, 192 Mo. 469, 91 S. W. 149; Lewis v. Rhodes, 150 Mo. 498, 52 S. W. 11; Hall v. Harris, 145 Mo. 614, 47 S. W. 506; Durkee v. Chambers, 57 Mo. 575; Hunter v. Miller, 36 Mo. 143; 156 A. L. R. 1184.

■ Having examined the whole record in an endeavor to correctly analyze and weigh the evidence, we are constrained to rule plaintiff has not clearly established her right to recover. Surely the plaintiff when she was confined in the hospital was seriously ill and greatly weakened physically. Her physician and relatives were in doubt as to her recovery. In such a situation it was not unnatural that she should desire to liquidate her businesses. We have closely examined the testimony of plaintiff's witnesses relevant to her physical and mental condition. Without doubt there were periods during her illness when she was so weak in body and in mind as to be in no condition to transact business at arm's length with defendant; but the nurses and relatives of plaintiff, who were of the opinion plaintiff was of unsound mind, supported their opinion evidence by stating the not unusual condition, conduct and demeanor "at intervals" of one who,

though unimpaired mentally, is in a critical physical condition and is being treated by the administration of potent medicines and drugs as was plaintiff. The witnesses did not undertake to particularly state plaintiff's conduct, actions and appearance as of the very time the contract and bill of sale were executed. The testimony of the defendant's witnesses who were present at the time of the execution of the sales instruments tends to show plaintiff was mentally competent and aware of the nature and terms of the instruments. The record is devoid of any evidence indicatory of an overreaching by defendant, or of any misrepresentation to plaintiff or to her brother by defendant or others. It seems to us the evidence clearly supports an inference plaintiff enjoyed the advice and counsel of her brother, a man of experience in business affairs. There is no charge, and no evidence supports a theory that defendant or others and plaintiff's brother conspired to impose upon plaintiff.

█ Plaintiff, in testifying of the value of the stores sold defendant, identified an inventory of the merchandise of the Hall of Gems. The inventory had been made during plaintiff's illness by the husband of plaintiff's niece. The niece's husband is a retired letter carrier. The inventory was made at the request of plaintiff's brother and was completed between the 15th and 23d of August, 1947. The named items were not particularly described. The inventory (totaling $82,871.60) was made upon a "retail" price basis, but plaintiff had extended the inventory "at odd times when I was able" to show a "cost" price (totaling $59,722.96) of the many and various items without an examination of the particular merchandise at the time and without having any invoices at hand. Of course the extended entries must have been made after the contract of sale was executed, and plaintiff tacitly admitted some of the "cost value" entries were made after she had instituted the instant action. In our opinion, plaintiff's evidence of value is of not sufficient probative weight to establish a value which would justify the conclusion the consideration paid was so unconscionably inadequate as to afford equitable relief on that ground alone.

█ Plaintiff's own subsequent acts (in the latter part of the year 1947) are supportive of the view she, when the sale was consummated, had been wholly cognizant of the sale of the stores to defendant. Undisputed evidence tends to show she visited defendant and his wife at the Hall of Gems on several (perhaps six) occasions after the sale. At these times she complimented defendant's wife upon the arrangement of the █ stock of merchandise and the cleanliness of the store. She advised defendant where he could order particular merchandise of the character sold in the store. She also accepted defendant's checks prorating insurance and taxes in compliance with the terms of the contract of sale. These latter transactions were so late as October 27th and December 29th, 1947.

Defendant introduced no evidence tending to support his claim for injunctive relief. However, plaintiff upon cross-examination admitted she, subsequently to the sale, erected a business building in which she now (at the time of trial) exposed for sale "jewelry gifts," glassware and vases not unlike items of the stocks of merchandise of the stores she had transferred to defendant. Upon being asked if she was conducting the "same type of business" in her new store as in the stores sold defendant, plaintiff answered, "I don't know that it's exactly the same type. I am not in Kimber's store. I am in this one." There is solid ground for the inference she was conducting a business in violation of the terms of her covenant. Possibly she was actuated by her theory the contract of sale was to be canceled. The decree enjoining plaintiff was worded in the language as used by plaintiff in her petition in which she had stated the character of merchandise she had featured in the stores sold defendant— "gifts, cards, stationery, - - - gems, jewelry, ornaments and similar merchandise." Plaintiff now says the terms "gifts" and "similar merchandise" in the injunctive decree are too general. Defendant had prayed that plaintiff be enjoined for a five-year period from owning a store, or engaging in the business (in Excelsior Springs) of selling and offering for sale "jewelry, costume jewelry, antiques, gifts, cards, stationery, or other items of merchandise identical or similar to the merchandise" formerly sold or offered for sale by plaintiff. We believe plaintiff's objection to the inclusion of the items "gems" and "ornaments" in the decree (on the ground the issues were without defendant's stated claim for injunctive relief) is too technical. The decree was sufficiently definite to protect defendant and not so general in its language as to unjustly circumscribe plaintiff. See generally 28 Am. Jur., Injunctions, § 300, pp. 472-474. The trial court's injunction was coextensive with and not more extensive than the protection to which defendant was entitled. The injunctive decree was justified by the pleadings, the contract, and the evidence.

The order of dismissal, and the decree of injunction should be affirmed.

· It is so ordered. *Bradley* and *Dalton, CC.,* concur.

PER CURIAM:—The foregoing opinion by VAN OSDOL, C., is adopted as the opinion of the court. All the judges concur.