Marguerite WEBB, Appellant,

v.

Louise HEDDLESON, Respondent.

No. 47077.

Supreme Court of Missouri,

Division No. 2.

Sept. 14, 1959.

———◆———

John C. Milholland, A. J. Anderson, Harrisonville, for appellant, Marguerite Webb, Anderson, Anderson & Milholland, Harrisonville, of counsel.

Wm. Coleman Branton, Allen S. Parish, Kansas City, for respondent Louise Heddleson, Brewer, Myers & Branton, Kansas City, of counsel.

BARRETT, Commissioner.

On June 19, 1954, Claude H. Heddleson, Sr., by warranty deed, gave a part of his farm in Cass County to his only child, Claude H. Heddleson, Jr., and on August 18, 1954, he deeded the entire farm to his son and his then daughter-in-law as tenants by the entirety. This is a suit by one of the grantor's sisters, Marguerite Webb, the devisee of the farm under his will executed January 9, 1949, to cancel the deeds on the grounds of lack of mental capacity to execute and undue influence by the son. The trial court denied cancellation and upon the sister's appeal it is urged that the trial court's judgment is against the weight of the credible evidence as to both mental capacity to execute and undue influence and that this court should therefore reverse the judgment and decree cancellation of the instruments.

With particular emphasis upon the dates, to which some significance is attached, the background of the action is this: Claude H. Heddleson, Sr., born March 27, 1892, was a fireman for the M.-K.-T. Railroad and retired on a railroad pension in 1943 or 1944 at age fifty-one or fifty-two, according to his brother, Arthur, because of high blood pressure and hardening of the arteries. Claude, Sr., and his wife, now Mrs. Coy Cook, were married in August 1919, and their only child, Claude, Jr., was born June 12, 1920. Upon his retirement Claude, Sr., moved to his farm in Cass County, it does not appear whether his wife went with him, but in 1948 his brother came to the farm and stayed until 1951. In November 1948, Claude, Sr., and his wife were divorced and in a property settlement she retained the home in Kansas City and he retained the farm. There was considerable bitterness between Claude and his wife in connection with the divorce and according to the plaintiff's witnesses Claude, Jr., sided with his mother, according to the defendant's witnesses he was only anxious to prevent a divorce. In any event, in January 1949, following the divorce in November 1948, Claude, Sr., executed a will in

which he devised his farm to his sister, the plaintiff, and he bequeathed the sum of one dollar to his son, Claude, Jr. In the latter part of July 1953, he left the farm and went or was taken to his sister's home in Kansas City and for the following ten or eleven months lived there as a member of her household. On June 12, 1954, Claude, Jr., removed his father from Mrs. Webb's home and took him to his home in Parsons, Kansas, and except for two or three months when he was cared for in the home of his former wife and her then husband, he was cared for by his son and his daughter-in-law, the defendant. As stated, the deeds to his son and to his son and daughter-in-law were executed in June and August 1954. Claude, Sr., died at age sixty-three in Mercy Hospital, Parsons, Kansas, on November 4, 1955. According to the death certificate the immediate cause of his death was "pyelo nephritis-uremia," other factors and antecedent causes were "prostatitis," "cerebral arteriosclerosis" and "hypertension." Claude, Jr., died on February 15, 1956, and this suit against his widow was instituted on June 20, 1956, Claude, Sr.'s, will being admitted to probate on August 6, 1956.

As indicated, the essence of this appeal is the claim that the trial court's judgment is "against the evidence and the greater weight of the credible evidence," therefore it would serve no useful purpose to list the cases and again set forth the rules governing the cancellation of deeds on the grounds of lack of mental capacity and undue influence —that has been done repeatedly. In connection with the essential claim, however, it may be of some profit to call attention to certain significant if not distinguishing factors. In the case principally relied on by the appellant, Stone v. Hohmann, 347 Mo. 184, 146 S.W.2d 551, the suit was by brothers and sisters against a sister and the trial court canceled the deed. This is not to indicate that there is a different rule or test when the suit is by a collateral representative of the grantor, here a sister whose interest is solely by reason of her being the principal beneficiary of a will, against, in effect, the grantor's only natural child and his daughter-in-law. The deeds from Claude, Sr., to Claude, Jr., and his wife were not ordinary business transactions, they constituted a gift from father to son and daughter-in-law and no unfavorable inference is permissible from the fact. Lastofka v. Lastofka, 339 Mo. 770, 99 S.W.2d 46. "In these cases, where there are only collateral heirs—no children for whom the donor or testator is responsible for being in the world—there is no inclination on the part of the courts to look sourly on the preference or exclusion of one collateral relative over the other, as he is under no legal or moral obligations to divide it equally amongst his relatives." Curtis v. Alexander, Mo., 257 S.W. 432, 437. As between Claude, Sr.'s, sister, the plaintiff and beneficiary of his will on the one hand, and his son and daughter-in-law, the defendant, on the other hand, it is not necessary to say whether in the circumstances of this case his sister was also a natural or primary object of his bounty. Norris v. Bristow, 358 Mo. 1177, 219 S.W.2d 367, 11 A.L.R.2d 725. It is sufficient to note in passing that "some of a class" did not profit "over others of the same class" by these deeds. Bohnsack v. Hanebrink, Mo., 240 S.W.2d 903, 907; Lowery v. Goslin, 345 Mo. 1024, 137 S.W. 2d 555; Borchers v. Barckers, 143 Mo.App. 72, 122 S.W. 357. The fact that the deeds were to the grantor's only child, a son, and his daughter-in-law and the fact that it is one of the grantor's sisters who seeks to set them aside impressed the trial court and this court likewise is not unmindful of the force of the fact.

But, the relationship of the parties and the relative merits of their claims upon the grantor's bounty aside, as it was with the applicable cases and rules, it is not necessary to detail all the evidence adduced and point out all the permissible inferences or to examine discrepancies and attempt to reconcile inconsistencies—that too has been done repeatedly. This does not mean that the evidence has not been weighed or that

the cause has not been considered anew in this court (V.A.M.S., Sec. 510.310); on the contrary the record has been carefully examined and the evidence weighed and sifted. But aside from its comparable sameness to numerous other similar records there are no compelling circumstances from which this court is confidently and necessarily driven to a different and contrary conclusion from that arrived at by the trial court. The plaintiff and her partisans, her brother, her sisters and her old friends and neighbors, all testified that Claude, Sr., lacked the mental capacity to execute the deed of August 18th. On the other hand, the defendant's partisans, her former mother-in-law—Claude, Jr.'s mother, her friends and neighbors, testified that even when critically ill Claude, Sr., was not lacking in mental capacity. As the trial court candidly and specifically found, "The record reveals a sharp conflict in the evidence on the issue of mental capacity" to execute the deeds, and it is solely in this conflict that the appeal presents any problem. And, unfortunately, temptingly in the background of the partisanship on both sides, there was the ever present fact of the farm, Claude, Sr.'s, only property of value. In retelling a telephone conversation the plaintiff's sister, Mrs. Glaze, testified that Claude, Jr., said, " 'I am coming over there and take dad away from there.' I said, 'What are you going to do that for?' and he said, 'Well, I am going to come over there and get him and who do you think should get the pension and farm?' I said, 'The one that takes care of him,' that was Marguerite" (the plaintiff).

The principal difficulty with the plaintiff's evidence and argument is that except as it may be inferred from the progressive and degenerative nature of his malady there is no cogent and specific firsthand proof as to his lack of capacity on the precise dates on which the deeds were executed—"*at the time of its execution*," as the cases say. McCoy v. McCoy, 360 Mo. 199, 205, 207, 227 S.W.2d 698, 703, 704; Farr v. Lineberger, Mo., 207 S.W.2d 455, 460. The respondent called but one medical witness but the fact that the plaintiff called more than one or the fact that the defendant did not call as a witness an unidentified doctor who gave Claude, Sr., a complete physical examination on June 15, 1954, do not of necessity alter the weight of the evidence. McCoy v. McCoy, supra. There was but one surviving witness to the actual execution of the deeds and that was Mrs. Goodrich, the notary and widow of Judge Goodrich who drafted the deeds. It was her opinion, repeatedly stated, that Claude, Sr., was mentally sound, knew the nature and extent of his property, the natural objects of his bounty and fully understood the nature of the transaction (Edinger v. Kratzer, Mo., 175 S.W.2d 807; Farr v. Lineberger, supra) and was indeed mentally capable of executing the deeds at the time they were executed. Mrs. Goodrich testified by deposition and the appellant points to discrepancies in her testimony which she characterizes as being "replete with patent material falsehoods" and therefore invokes a Latin maxim in condemnation of her testimony, but the discrepancies do not patently destroy the essentials of her evidence and its weight or force.

There were circumstances corroborative of background for undue influence—opportunity and suspicion and Claude, Jr.'s, presence when the deed of August 18th was executed, but there was in point of fact no direct evidence of overpersuasion or coercion on Claude, Jr.'s, part and the weight of the facts, singly or in combination, is not on the side of undue influence. McCoy v. McCoy, supra; Lastofka v. Lastofka, supra; Been v. Jolly, Mo., 247 S.W.2d 840, 854. Until the last day of the trial the plaintiff was not even aware of the deed of June 19th, although recorded June 21, 1954, and there was no evidence as to the circumstances in which it was admittedly executed by Claude, Sr.

In short, the weight of the evidence as to both issues, mental capacity and undue influence, is not so manifestly and overwhelmingly on the side of the plaintiff as to com-

pel the cancellation of these two instruments (Sullivan v. Winer, Mo., 310 S.W. 2d 917) and, accordingly, the judgment is affirmed.

BOHLING and STOCKARD, CC., concur.

PER CURIAM.

The foregoing opinion by BARRETT, C., is adopted as the opinion of the Court.

All concur.